# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **VERNON 4540 REALTY, LLC,** | Case No. 20-22919 (RDD) |
| Debtor. | |

## AMENDED COMBINED DISCLOSURE STATEMENT AND
## CHAPTER 11 PLAN OF LIQUIDATION FOR VERNON 4540 REALTY, LLC

Joseph T. Moldovan
Edward P. Gilbert
David J. Kozlowski
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
T: 212-735-8600
F: 212-735-8708
jmoldovan@morrisoncohen.com
egilbert@morrisoncohen.com
dkozlowski@morrisoncohen.com

*Counsel to Creditor and Plan Proponent CSC 4540, LLC*

Dated: June 23, 2021

<u>**TABLE OF CONTENTS**</u>

**DEFINITIONS** ................................................................ 6

**RULES OF INTERPRETATION AND CONSTRUCTION** ................................. 19

**INTRODUCTION** ............................................................. 20

I. BACKGROUND .............................................................. 26
A.      Description and History of the Debtor's Business ....................... 26
B.      The Brownfield Tax Credit ............................................ 27
C.      The Brownfield Tangible Property Credit Share ........................ 30

II. EVENTS DURING THE CHAPTER 11 CASE ...................................... 32
A.      Commencement of the Case and the Debtor's Postpetition Activities ......... 32
B.      The Motion for Summary Judgement and the Examiner Appointment ...... 33
C.      Discovery and the Plan Process ....................................... 33

III. THE CHAPTER 11 PLAN PROCESS AND CONFIRMATION
      REQUIREMENTS ......................................................... 34

IV. TREATMENT, CLASSIFICATION, AND IMPAIRMENT OF CLAIMS AND
      INTERESTS ............................................................ 34
A.      Summary ............................................................. 35
B.      Classification ...................................................... 35

V. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND OTHER CLAIMS
      .................................................................... 37
A.      Introduction ........................................................ 37
B.      Administrative Claims in General .................................... 37
C.      Bar Date for Administrative Claims .................................. 37
D.      Statutory Fees ...................................................... 37
E.      Professional Fees. .................................................. 37

VI. IMPLEMENTATION OF THE AMENDED PLAN ..................................... 38

VII. ACCEPTANCE OR REJECTION OF THE AMENDED PLAN AND CERTAIN
      RISK FACTORS ......................................................... 38
A.      Plan Proponents May Not Be Able to Secure Confirmation of the Amended
      Plan ................................................................ 39
B.      Delays or Non-Occurrence of Confirmation or of the Effective Date ........... 39

C.     Parties May Object to the Classification of Claims and Interests ............... 39

D.     Risk Factors that May Affect Distributions Under the Amended Plan ....... 39

E.     Carrier has appealed the Order granting Summary Judgment. If he is successful on appeal, the Brownfield Tax Credit may not be deposited in the Liquidating Trust. ........................................................................................ 40

F.     The Amended Plan May be Rejected and not Confirmed ............................ 40

VIII. REQUIREMENTS FOR CONFIRMATION ........................................................ 40

A.     Requirements for Confirmation ................................................................... 41

B.     Classification of Claims and Interests .......................................................... 41

C.     Impaired Claims or Interests ........................................................................ 41

D.     Eligibility to Vote on the Amended Plan ...................................................... 41

E.     The Amended Plan Satisfies the Best Interests of Creditors Test Liquidation Analysis .................................................................................... 41

F.     The Amended Plan is Feasible ..................................................................... 42

IX. EFFECT OF CONFIRMATION ............................................................................ 42

A.     Transfer and Vesting of Assets .................................................................... 42

B.     Authority to Effectuate Amended Plan ........................................................ 42

C.     Late Claims .................................................................................................. 43

X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................. 43

A.     Assumption and Rejection of Executory Contracts and Unexpired Leases . 43

B.     Bar Date for Rejection Damages ................................................................. 44

C.     Insurance Policies ........................................................................................ 44

D.     Modifications, Amendments, Supplements, Restatements, or Other Agreements .................................................................................................. 44

E.     Contracts and Leases Entered Into After the Petition Date ......................... 44

F.     General Reservation of Rights ..................................................................... 44

XI. IMPLEMENTATION OF THIS PLAN ................................................................. 45

A.     Creation of Liquidating Trust ...................................................................... 45

B.     The Liquidating Trustee. .............................................................................. 47

C.     Cancellation of Instruments and Interests ................................................... 48

D.     Disposition of Books and Records ............................................................... 48

E.     Corporate Existence and Dissolution of Debtor ........................................... 48

F.        Closing the Chapter 11 Case ........................................................... 48

XII. DISTRIBUTIONS ........................................................................... 48
A.        The Liquidating Trustee to Make Distributions ........................... 48
B.        Method of Payment; Payments, Filings, and Notices Only on Business Days ........................................................................... 48
C.        Undeliverable or Unclaimed Distributions ................................... 49
D.        Time Bar to Cash Payments ........................................................ 49
E.        Setoff and Recoupment .............................................................. 49
F.        No Interest .................................................................................. 50
G.        Disputed Claims ......................................................................... 50
H.        Withholding Taxes ...................................................................... 50
I.        Fractional Dollars, De Minimis Distributions ............................. 50

XIII. ALLOWANCE OF CLAIMS AND INTERESTS AND PROCEDURES FOR RESOLVING DISPUTED CLAIMS ........................................... 51
A.        Prosecution of Objections to Claims ........................................... 51
B.        Disallowance of Claims ............................................................... 51
C.        No Distribution Pending Allowance ............................................ 51
D.        Allowance of Claims ................................................................... 51
E.        Late Claims ................................................................................. 51
F.        Estimation of Claims ................................................................... 52
G.        Cumulative Remedies .................................................................. 52

XIV. EFFECT OF THE AMENDED PLAN ON CLAIMS, INTERESTS, AND RIGHTS OF ACTION ............................................................. 52
A.        Binding Effect ............................................................................. 52
B.        Vesting of Assets ........................................................................ 52
C.        Authority to Effectuate Amended Plan ....................................... 52

XV. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ...................................................................... 54
A.        Conditions to Effectiveness ......................................................... 54
B.        Waiver of Conditions .................................................................. 54
C.        Effect of Non-Occurrence of the Effective Date .......................... 54

XVI. CERTAIN FEDERAL INCOME TAX CONSEQUENCES ................ 54

XVII. EXCULPATION, INJUNCTION, AND RELATED PROVISIONS .................. 55

A.     Exculpation ...................................................................................... 55

B.     Releases by the Debtor ................................................................... 55

C.     RELEASES BY HOLDERS OF CLAIMS ...................................... 56

D.     INJUNCTION ................................................................................. 57

XVIII. RETENTION OF JURISDICTION ................................................... 58

XIX. MISCELLANEOUS ............................................................................... 61

A.     Effecting Documents; Further Transactions; Timing ................... 61

B.     Governing Law .............................................................................. 61

C.     Continuing Viability of Other Orders/Agreements ...................... 61

D.     Exemption from Transfer Taxes ................................................... 61

E.     Preservation and Application of Insurance .................................. 61

F.     Post-Effective Date Fees; Final Decree ....................................... 61

G.     Modification and Amendments ..................................................... 62

H.     Expedited Tax Determination ...................................................... 62

I.     Post-Confirmation Reporting ....................................................... 62

J.     Revocation, Withdrawal, or Non-Consummation ........................ 62

K.     Exhibits/Schedules ....................................................................... 62

L.     Substantial Consummation ........................................................... 63

M.     Notices ........................................................................................... 63

N.     Entire Agreement .......................................................................... 64

O.     Severability ................................................................................... 64

P.     Conflicts ........................................................................................ 65

EXHIBIT 1 – LIQUIDATION ANALYSIS ................................................ 67

EXHIBIT 2 – ORGANIZATIONAL CHART............................................. 71

# AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION FOR VERNON 4540 REALTY, LLC,[1]

The Plan Proponents, which are creditors of the Debtor, Vernon 4540 Realty, LLC hereby submit and propose this Amended Plan for the Debtor. The Debtor filed its petition for relief under Chapter 11 on August 5, 2020. In accordance with 11 U.S.C. § 1121, the Debtor's exclusive period to file a plan of reorganization expired on December 3, 2020.

This Amended Plan amends the Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Vernon 4540 Realty, LLC filed on April 14, 2021 by 45-50 Vernon LP [Docket No. 48].

Creditor CSC 4540, LLC is the Plan Proponent of this Amended Plan.

## DISCLAIMER[2]

**NOTHING CONTAINED IN THIS DOCUMENT SHALL CONSTITUTE AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE PLAN PROPONENTS OR ANY OTHER PARTY IN INTEREST, SINCE THIS AMENDED PLAN REMAINS, *INTER ALIA*, SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED HEREIN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THE AMENDED PLAN BY THE BANKRUPTCY COURT. THE INFORMATION CONTAINED IS PRELIMINARY AND DEVELOPMENTS MAY OCCUR THAT REQUIRE MODIFICATIONS OR ADDITIONS TO, OR DELETIONS FROM, THIS AMENDED PLAN.**

THIS AMENDED PLAN IS THE ONLY DOCUMENT THAT CREDITORS AND OTHER PARTIES IN INTEREST SHOULD CONSIDER IN CONNECTION WITH CONFIRMATION OF THE AMENDED PLAN, INCLUDING, WITHOUT LIMITATION, THE SOLICITATION OF VOTES WITH RESPECT TO THE AMENDED PLAN. NO REPRESENTATIONS HAVE BEEN AUTHORIZED CONCERNING THE DEBTOR, ITS ASSETS, OR CLAIMS AGAINST THE DEBTOR, EXCEPT AS SET FORTH IN THIS AMENDED PLAN. ACCORDINGLY, CREDITORS AND OTHER PARTIES IN INTEREST SHOULD NOT RELY ON ANYTHING OTHER THAN THIS AMENDED PLAN AND IN THE EXHIBITS ATTACHED HERETO AND THERETO, IN CONSIDERING WHETHER TO VOTE TO ACCEPT OR REJECT THE AMENDED PLAN. ALL INFORMATION IN THIS

---

[1] All capitalized terms used in this document and any attachments to this document, not otherwise defined in the text of this document or any attachments to this document, are defined in the "Definitions" section below.

[2] This Disclaimer is included for historical purposes only. Notwithstanding this Disclaimer, or any disclaimers herein, the provisions of the confirmed Plan and the Confirmation Order bind the Debtor and all creditors and parties in interest.

AMENDED PLAN IS FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE AMENDED PLAN.

THE PLAN PROPONENTS URGE YOU TO READ THIS AMENDED PLAN CAREFULLY. IT CONTAINS IMPORTANT INFORMATION CONCERNING THE DEBTOR (INCLUDING ITS HISTORY AND BUSINESS OPERATIONS), CLAIMS AGAINST THE DEBTOR, AND HOW CLAIMS WILL BE TREATED IF THE AMENDED PLAN IS CONFIRMED BY THE BANKRUPTCY COURT.

YOU ALSO SHOULD CONSIDER CONSULTING WITH YOUR OWN COUNSEL OR OTHER ADVISORS IN CONNECTION WITH YOUR CLAIM(S) AGAINST THE DEBTOR, THE TREATMENT TO BE AFFORDED TO YOUR CLAIM(S) UNDER THE AMENDED PLAN, AND ANY TAX CONSEQUENCES TO YOU, IF ANY, ATTENDANT TO CONFIRMATION OF THE AMENDED PLAN.

THE PLAN PROPONENTS CANNOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY OR ERROR, BUT DO BELIEVE THAT THE INFORMATION CONTAINED HEREIN IS THE MOST ACCURATE INFORMATION AVAILABLE TO THEM AT THIS TIME. NOTHING CONTAINED HEREIN IS AN ADMISSION OF ANY FACT OR LIABILITY NOR SHALL IT BE ADMISSIBLE IN ANY MATTER OR PROCEEDING ARISING IN OR RELATED TO THIS BANKRUPTCY CASE OR IN ANY OTHER ACTION, PROCEEDING, OR LITIGATION INVOLVING THE PLAN PROPONENTS.

NO REPRESENTATIONS OTHER THAN AS SET FORTH IN THIS AMENDED PLAN ARE AUTHORIZED WITH RESPECT TO THE AMENDED PLAN AND ANY SUCH REPRESENTATIONS ARE NOT ADOPTED BY THE PLAN PROPONENTS AND SHOULD NOT BE RELIED UPON IN MAKING YOUR DECISION WHETHER TO ACCEPT OR TO REJECT THE AMENDED PLAN.

THIS AMENDED PLAN IS BEING DISTRIBUTED TO ALL CREDITORS AND EQUITY INTEREST HOLDERS OF THE DEBTOR PURSUANT TO 11 U.S.C. §§ 1125 AND 1129.

THE BANKRUPTCY CODE PROVIDES THAT ONLY THE BALLOTS OF CLAIMANTS AND INTEREST HOLDERS THAT ACTUALLY VOTE ON THE AMENDED PLAN WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER THE ACCEPTANCES REQUIRED FOR CONFIRMATION OF THE AMENDED PLAN HAVE BEEN ATTAINED. FAILURE TO DELIVER A PROPERLY COMPLETED BALLOT BY THE VOTING DEADLINE WILL CONSTITUTE AN ABSTENTION, MEANING THAT THE BALLOT WILL NOT BE COUNTED AS EITHER AN ACCEPTANCE OR A REJECTION, AND ANY

IMPROPERLY COMPLETED OR LATE BALLOT WILL SIMILARLY NOT BE COUNTED.

THE PLAN PROPONENTS BELIEVE THAT CONFIRMATION OF THE AMENDED PLAN IS IN THE BEST INTERESTS OF THE DEBTOR, THE DEBTOR'S CREDITORS, AND ALL OTHER PARTIES IN INTEREST. ACCORDINGLY, THE PLAN PROPONENTS URGE YOU, FOR THE REASONS WHICH FOLLOW, TO VOTE IN FAVOR OF THE AMENDED PLAN.

**SOLICITATION, VOTING, OBJECTIONS,
<u>AND CONFIRMATION DEADLINES</u>**

**A.      Solicitation Packages**. In accordance with the Conditional Approval Order, Holders of Claims and Interests who are eligible to vote to accept or reject the Amended Plan will receive appropriate solicitation materials in connection with voting on the Amended Plan (collectively, the "**Solicitation Package**"), including:

- the Amended Plan and all exhibits;
- the Confirmation Hearing Notice;
- an appropriate "Ballot" for voting on the Amended Plan with voting instructions, together with a pre-addressed, postage prepaid return envelope;
- a cover letter from the Plan Proponents (1) describing the contents of the Solicitation Package, and (2) urging the Holders of Claims and Interests in each of the Voting Classes to vote to accept the Amended Plan; and
- any supplemental documents the Plan Proponents may file with the Bankruptcy Court or that the Bankruptcy Court orders to be included in the Solicitation Package.

The Solicitation Package may also be obtained by (i) writing to: Vernon 4540 Plan Proponents c/o, Morrison Cohen LLP, Attn. Joseph T. Moldovan and David J. Kozlowski, 909 Third Avenue, New York NY 10022, or (ii) emailing: VernonPlanProponents@morrisoncohen.com.

**B.      Voting Deadline**. The deadline to vote on the Plan is **July 21, 2021 at 4 p.m. ET**.

**C.      Voting Procedures**. The Plan Proponents are distributing, in the Solicitation Package, this Amended Plan, accompanied by a Ballot to be used for voting to accept or reject the Amended Plan, to the Holders of Claims and Interests entitled to vote to accept or reject the Amended Plan. If you are a Holder of a Claim in Class 2 or Interest in Class 3, you may vote to accept or reject the Amended Plan by completing the Ballot and returning it in the envelope provided.

All votes to accept or reject the Amended Plan must be cast by using the appropriate Ballot. For a Ballot to count, the Ballot **must be actually received** by the Plan Proponents by the Voting Deadline at the following address, whether sent by first class mail, personal delivery, or overnight courier:

Vernon 4540 Plan Proponents
c/o Morrison Cohen LLP
909 Third Avenue
New York NY 10022

Any ballot that is properly executed by the Holder of a Claim or Interest entitled to vote that does not clearly indicate an acceptance or rejection of the Amended Plan or that indicates both an acceptance and a rejection of the Amended Plan will not be counted. Ballots received by facsimile or by electronic means will not be counted.

Each Holder of a Claim or Interest entitled to vote to accept or reject the Amended Plan may cast only one ballot for each Claim or Interest held by such Holder. By signing and returning a ballot, each Holder of a Claim or Interest entitled to vote will certify to the Bankruptcy Court and the Plan Proponents that no other Ballots with respect to such Claim or Interest have been cast or, if any other Ballots have been cast with respect to such Claim, such earlier Ballots are superseded and revoked.

All Ballots will be accompanied by return envelopes. It is important to follow the specific instructions provided on each ballot, as failing to do so may result in the ballot not being counted.

**D.      Plan Objection Deadline**. The Bankruptcy Court has established **July 21, 2021, at 4 p.m. ET**, as the deadline to object to confirmation of the Amended Plan. Any objection to confirmation of the Amended Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection, and the amount of the Claim or the Interest held by the objecting party. Objections to confirmation of the Amended Plan are governed by Bankruptcy Rule 9014. **Failure by a Creditor or Interest Holder to timely file an objection to the Amended Plan or timely cast a ballot in accordance with the Conditional Approval Order shall constitute an agreement by silence to accept the terms contained in this Amended Plan.** All such objections must be filed with the Bankruptcy Court and served on the Plan Proponents and the Notice Parties in accordance with the Conditional Approval Order so that they are actually received on or before the Plan Objection Deadline. The Plan Proponents believe that the Plan Objection Deadline, as established by the Bankruptcy Court, affords the Bankruptcy Court, the Debtor, and other parties in interest reasonable time to consider the objections to the Amended Plan before the Confirmation Hearing.

**E.**     **Confirmation Hearing**. Assuming the requisite acceptances are obtained for the Amended Plan, the Plan Proponents seek confirmation of the Amended Plan at a hearing scheduled on **July 28, 2021 at 10 a.m. ET** before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street White Plains, NY 10601-4140. The Confirmation Hearing will likely take place virtually. Any instructions for a virtual hearing will come from the Court, unless the Plan Proponents are instructed to provide notice. The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on the entities who have filed objections to the Plan, without further notice to other parties in interest. The Bankruptcy Court, in its discretion and before a Confirmation Hearing, may put in place additional procedures governing such hearing. The Amended Plan may be modified, if necessary, before, during, or as a result of the Confirmation Hearing without further notice to parties in interest, subject to the terms of the Amended Plan.

# DEFINITIONS

The following terms have the respective meanings specified below, except as expressly provided in other sections of the Amended Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined). Any capitalized term used in the Amended Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**Administrative Claim**: A Claim for any expense Allowed under Bankruptcy Code §§ 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**Administrative Claims Bar Date**: For all Administrative Claims except Professional Fee Claims, the first business day that is 15 days following the Effective Date, unless the Bankruptcy Court has entered an order setting an earlier Administrative Claims Bar Date.

**Allowed**: Means, with respect to any Claim or Interest against the Debtor, (a) any Claim against the Debtor, or Interest in the Debtor, that has been listed by the Debtor in the Schedules (as such Schedules may be amended from time-to-time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim or Interest has been filed or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim as to which no objection has been or is interposed in accordance with the Amended Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Amended Plan, "Allowed Administrative Expense Claim," or "Allowed Claim" shall not, for any purpose under the Amended Plan, include interest on such Claim from and after the Petition Date, unless the Debtor is solvent and there are adequate funds in the Debtor's estate or the Liquidating Trust to pay all Allowed Claims in full in which case all Allowed Claims will be entitled to the par value of the Allowed Claim plus postpetition interest from the Petition Date calculated at the Federal Judgment Rate, (d) any Claim or Interest or any portion thereof that has been expressly allowed under the Amended Plan, or (e) that is agreed to by the Plan Proponents and the holder of such Claim or Interest excluding claims of the Plan Proponent (Claim No. 5–2), JSMB

4540 LLC (Claim No. 7–1), and 45-50 Vernon LP (Claim No. 8–1), all of which have been determined by the Court.

**Allowed [...] Claim**: An Allowed Claim in the particular Class or category specified.

**Amended Plan**: This amended combined disclosure statement and liquidating plan and all exhibits hereto, either in its present form or as may be altered, amended, modified, or supplemented from time to time in accordance with this Amended Plan, the Bankruptcy Code, and the Bankruptcy Rules.

**Avoidance Actions**: Any and all rights to recover or avoid transfers under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, §§ 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, to recover transfers pursuant to § 550 of the Bankruptcy Code, to avoid any lien under § 506(d) of the Bankruptcy Code, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

**Ballot**: The ballot upon which a Holder of an Impaired Claim or Interest entitled to vote on the Amended Plan shall, among other things, indicate its acceptance or rejection of the Amended Plan in accordance with the procedures herein and in the Conditional Approval Order.

**Bankruptcy Code**: Title 11 of the United States Code as of the Petition Date.

**Bankruptcy Court**: The United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Chapter 11 Case or in the event such court ceases to exercise jurisdiction over this Chapter 11 Case, any other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, and the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein.

**Bar Date**: February 22, 2021, the date fixed by order of the Bankruptcy Court as the date by which all proofs of claim with the exception of those asserted by governmental entities (as defined in the Bankruptcy Code) were required to be filed against the Debtor. For the avoidance of doubt, the Bar Date is not inclusive of the Rejection Claim Bar Date.

**Bar Dates**: The Bar Date and the Governmental Bar Date.

**Brent Carrier**: The Debtor's Managing Member whose address is 45 Carleon Avenue, Larchmont, NY 10538, brentlcarrier@yahoo.com.

**Brownfield Cleanup Program**: A program enacted by the State of New York in 2003 and amended thereafter, to provide refundable tax credits to Persons that remediate brownfield—environmentally contaminated—sites and that build on those site. As further discussed and explained in Article I, Section B.

**Brownfield Tangible Property Credit**: the qualified tangible property tax credit arising under the Brownfield Cleanup Program on account of the value of the improvements constructed on a brownfield site.

**Brownfield Tangible Property Credit Share**: The 50% distributive share of CSC's potential Brownfield Tangible Property Credit component paid by New York State pursuant to NYS Tax Law § 21(a)(3), arising from Debtor's Class B interest in non-debtor CSC (the entity that is the 100% owner of CSC 4540 Property Co. LLC, which owns the Property) pursuant to Section 8.2(b) of the LLC Agreement, which are collected and received (net of such collection costs) by the New York State taxpaying owner(s) of the Class B interest. As further discussed and explained in Article I, Section C.

**Brownfield Tax Credit**: A tax refund in the approximate amount of $1.9 million due to the Debtor under the Brownfield Cleanup Program as a result of environmental remediation performed at the Property. As further discussed and explained in Article I, Section B, under N.Y. Tax Law § 21, these credits arise from the qualified remediation of an eligible contaminated site, and are called the "site preparation credit component" of the tax credit.

**Business Day**: Any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

**Carrier**: Brent Carrier.

**Carrier Claim**: The $1,500,000 unsecured claim of Brent Carrier scheduled by the Debtor on its Schedules as not contingent, disputed, or unliquidated.

**Case**: This Chapter 11 Case.

**Cash**: Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately-available funds.

**Chapter 11 Case**: This case filed under chapter 11 of the Bankruptcy Code for the Debtor pending before the Bankruptcy Court under Case No. 20-22919 (RDD).

**Claim**: A claim against the Debtor or its property as defined in Bankruptcy Code § 101(5).

**Claimant**: An entity that holds a Claim against the Debtor that arose at the time of or before the Petition Date, or an entity that has a Claim against the Estate of a kind specified in Bankruptcy Code §§ 348(d), 502(f), 502(g), 502(h), or 502(i).

**Claim Objection Deadline**: The first Business Day that is 180 days after the Effective Date.

**Class**: A category consisting of Holders of Claims or Interests substantially similar in nature to the Claims or Interests of other Holders placed in that category, as designated in Article IV of the Amended Plan pursuant to Bankruptcy Code § 1122.

**Conditional Approval Order**: The order of the Bankruptcy Court entered on June 23, 2021, granting Plan Proponents' *Application for Conditional Approval of Combined Plan and Disclosure Statement as Providing Adequate Information Satisfying 11 U.S.C. § 1125, Scheduling a Combined Hearing, Approving the Form of Ballot, and Fixing Dates and Deadlines* [Docket No. 54] conditionally approving the Amended Plan as providing adequate disclosure under 11 U.S.C. § 1129.

**Confirmation Date**: The date the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**Confirmation Hearing**: The hearing scheduled by the Bankruptcy Court for July 28, 2021 at 10 a.m. ET, to consider confirmation of the Amended Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Hearing Notice**: The notice of the Confirmation Hearing.

**Confirmation Order**: The order confirming the Amended Plan in accordance with the provisions of the Bankruptcy Code.

**Counsel for the Debtor**: H. Bruce Bronson, Esq., Bronson Law Offices P.C., 480 Mamaroneck Ave., Harrison, NY 10528, T: 914-269-2530, F: 888-908-6906, hbbronson@bronsonlaw.net.

**Counsel for the Plan Proponents**: Joseph T. Moldovan, Edward P. Gilbert, David J. Kozlowski, Morrison Cohen, LLP, 909 Third Avenue, New York, NY 10022, T: 212-735-8600, F: 212-735-8708, jmoldovan@morrisoncohen.com, egilbert@morrisoncohen.com, dkozlowski@morrisoncohen.com.

**Counsel for the Examiner**: Janice B. Grubin, Partner, Barclay Damon LLP, 1270 Avenue of the Americas, Suite 501, New York, NY 10020, T: 212-784-5808, F: 212-784-5775, JGrubin@barclaydamon.com.

**CSC**: CSC 4540, LLC.

**CSC Class B Interest**: The Debtor's Class B Interest in CSC 4540, LLC.

**Cure**: The payment of Cash from the Funding Commitment, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure monetary defaults under an Executory Contract or Unexpired Lease of the Debtor and to permit the Plan Proponents to assume that contract or lease under § 365(a) of the Bankruptcy Code.

**Debtor**: Vernon 4540 Realty, LLC.

**Debtor-in-Possession**: The Debtor, during the period commencing on the Petition Date and ending on the Effective Date.

**Debtor Release**: The release provided by the Debtor to the Released Parties in Article XVII of this Amended Plan.

**Disallowed**: A Claim as to which a Final Order has been entered disallowing the Claim or a portion thereof.

**Disputed**: Means, as to any Claim (or portion thereof) or Interest against the Debtor, a Claim or Interest that is not an Allowed Claim or Interest and (a) is listed on the Schedules as disputed, unliquidated, or contingent, (b) is filed pursuant to Bankruptcy Code § 501(a) as unliquidated or contingent, or (c) as to which any party in interest with standing, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules that has not been determined by Final Order.

**Distribution**: A payment to the Holder of an Allowed Claim or Interest.

**DTF**: The New York State Department of Taxation and Finance.

**Effective Date**: The date on which this Amended Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of this Amended Plan specified in Article XV, have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Plan Proponents with the Bankruptcy Court.

**Estate**: The bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code.

**Examiner**: Angela M. Orlandella, who was appointed by order of the Bankruptcy Court entered on March 31, 2021, as examiner with expanded powers to obtain, monetize, and bring into the Estate the Brownfield Tax Credit.

**Exculpated Parties**: The Released Parties.

**Executory Contract**: Any contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**Federal Judgement Rate**: 2.59%, or such amount as is provided pursuant to 28 U.S.C. § 1961(a) at the time of a Distribution,

**Final Decree**: An order entered by the Bankruptcy Court closing the Chapter 11 Case.

**Final Order**: An order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired; *provided, however*, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

**Funding Commitment**: The sum of $630,000 that the Plan Proponent has agreed under this Amended Plan to provide directly, or through its designee, to enable the Liquidating Trustee to make the Initial Distribution and potentially a portion of the Second Distribution required under the Amended Plan.

**General Unsecured Claim**: Any Claim against the Debtor existing as of the Petition Date other than a Secured Claim, Administrative Claim, Priority Tax Claim, or other Priority Claim.

**Governmental Bar Date**: February 1, 2021, the last day upon which governmental entities may file proofs of claim.

**Holder**: A Person holding a Claim or Interest.

**Impaired**: Means impaired within the meaning of section 1124 of the Bankruptcy Code.

**Initial Distribution**: Means the distribution from the Funding Commitment (after reserving for known Administrative Claims and Statutory Fees) by the Liquidating Trustee to Holders of Allowed Claims in Class 1 and Class 2, except the Plan Proponent's Claim and the Judgment Claim.

**Initial Distribution Date**: The Effective Date, as defined herein, or as soon as practicable thereafter.

**Insider**: Insider shall have the meaning ascribed to it in Bankruptcy Code § 101(31).

**Insurance Policy**: Any issued policy of insurance and any agreements relating thereto covering the Debtor, the Estate, or its assets, directors, officers, members, managers, employees, and fiduciaries, or that may be available to provide coverage for Claims against the Debtor or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrella or excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary, and organization liability policy(ies) (A, B, or C coverage), and any tail with respect thereto.

**Interest**: Any equity interest in the Debtor represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

**Interest Holder**: A Holder of an Interest.

**Interest Holder's Bar Date**: To the extent an Interest Holder desires to become a Holder of a Liquidating Trust Class B Interest, such Interest Holder must file a proof of interest within 30 days after the Effective Date. Each Interest Holder will be provided express notice of the Interest Holder's Bar Date by the Plan Proponent or Liquidating Trustee.

**JSMB**: JSMB 4540 LLC.

**JSMB MM**: JSMB 4540 MM LLC.

**Judgment Claim**: Allowed Claim No. 3 in the amount of $216,589.56.

**Liquidating Trust**: The liquidating trust created pursuant to the Amended Plan to distribute the proceeds of the Liquidating Trust Assets for the benefit of Holders of Allowed Claims or Interests that is to be formed and governed by the terms of the Amended Plan and the Liquidating Trust Agreement.

**Liquidating Trust Agreement**: The Liquidating Trust Agreement that is to govern the Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Liquidating Trust Assets shall be initially conveyed to the Liquidating Trust and shall ultimately be distributed pursuant to the terms of this Amended Plan.

**Liquidating Trust Assets**: The Funding Commitment and the Brownfield Tax Credit.

**Liquidating Trust Class B Interest**: The interest in the Liquidating Trust granted to Interest Holders under the Plan that will enable them to possibly share in the Second Distribution or Third Distribution.

**Liquidating Trustee**: The individual or entity named in the Liquidating Trust Agreement, who shall be empowered to distribute the Liquidating Trust Assets and to manage the Liquidating Trust pursuant to the terms of the Amended Plan and the Liquidating Trust Agreement.

**Liquidation Analysis**: Exhibit 1 to the Amended Plan.

**Liquidation Value**: The amount realizable if the Debtor's assets were sold and liquidated under Chapter 7 of the Bankruptcy Code as detailed in the Liquidation Analysis.

**LLC Agreement**: The LLC Agreement entered into on November 15, 2013, among the Debtor, 45-50 Vernon LP's predecessor in interest, Manresa Limited, and affiliates JSMB and JSMB MM under which CSC was formed for purposes of, *inter alia*, developing, owning, leasing, and selling the Property.

**Local Bankruptcy Rules**: The Local Bankruptcy Rules for the Southern District of New York, as may be amended from time to time, as applicable to the Chapter 11 Case or proceedings therein.

**Motion for Summary Judgment**: Motion of the Plan Proponents and JSMB MM in adversary proceeding Bankr. S.D.N.Y. case no. 20-07020 (RDD) against the Debtor and Carrier for declaratory judgment, turnover of property under section 542 of the Bankruptcy Code, and seeking injunctive relief, which was granted by order of the Bankruptcy Court on March 29, 2021.

**Notice Parties**: Counsel for the Debtor, Counsel for the Plan Proponents, Counsel for the Examiner, Carrier, all persons or parties requesting or entitled to notice under Bankruptcy Rule 2002, and the U.S. Trustee.

**Order Granting Motion for Summary Judgment**: The order of the Bankruptcy court granting the Motion for Summary Judgement in adversary proceeding Bankr. S.D.N.Y. case no. 20-07020 (RDD) on March 29, 2021.

**Person**: An individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

**Petition Date**: December August 5, 2020, the date upon which the Debtor filed its voluntary Chapter 11 bankruptcy petition.

**Plan Objection Deadline**: The Bankruptcy Court has established **July 21, 2021, at 4 p.m. ET**, as the deadline to object to confirmation of the Amended Plan.

**Plan Proponent**: CSC 4540, LLC.

**Plan Proponents**: For historical references herein, 45-50 Vernon LP, CSC 4540, LLC, and JSMB 4540 LLC.

**Plan Proponent's Claim:** the proof of claim filed by the Plan Proponent evidenced by claim number 5, in the amount allowed by the Court.

**Plan Proponents' Claims**: For historical references herein, the proofs of claim filed by the Plan Proponents in this Case evidenced by claim numbers 5, 7, and 8.

**Plan Supplement**: Any supplement to this Amended Plan or any exhibits thereto to be filed by the Plan Proponents as permitted herein on or before the Plan Supplement Filing Date.

**Plan Supplement Filing Date**: The date on which the Plan Supplement is filed, which shall July 20, 2021.

**Priority Claims**: All Priority Non-Tax Claims and Priority Tax Claims.

**Priority Non-Tax Claims**: Those claims afforded priority under Bankruptcy Code § 507(a) other than Administrative Claims and Priority Tax Claims.

**Priority Tax Claims**: Those claims afforded priority under Bankruptcy Code §§ 502(i) or 507(a)(8).

**Pro Rata Share**: Pro Rata is a Latin term used to describe a proportionate allocation. It essentially translates to "in proportion," which means a process where whatever is being allocated will be distributed in equal portions. If something is given out to people on a Pro Rata basis, it means assigning an amount to one person according to their share of the whole. In the context of this Amended Plan it means the share of the total amount available from the Liquidating Trust Assets allocable to each Holder of an Allowed Claim or Interest.

**Professional**: Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327, 1103, and/or 1106 and to be compensated for services rendered prior to the Effective Date pursuant to Bankruptcy Code §§ 327, 328, 329, 330, and/or 331; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code §§ 330 and 503(b)(2). Professional includes Counsel for the Debtor, the Examiner, and professionals retained by the Examiner.

**Professional Fee Claim**: To the extent Allowed pursuant to a Final Order of the Bankruptcy Court, (a) a claim under Bankruptcy Code §§ 327, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estate's behalf by a Professional; and (b) a claim under Bankruptcy Code § 503(b)(4) for compensation for professional services rendered.

**Property**: The real property located at 45-40 Vernon Boulevard, Long Island City, New York owned by non-debtor CSC 4540 Property Co. LLC.

**Rejection Claim**: Any Claim for amounts due as a result of the rejection of any executory contract or unexpired lease that is rejected under the Amended Plan, which Claim must be filed by the Rejection Claim Bar Date.

**Rejection Claim Bar Date**: 30 days after the Effective Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within 30 days of entry of an Order ruling on such a motion. Each counterparty to any known Executory Contract or Unexpired Lease that is rejected under the Plan as of the Effective Date will be provided express notice of the Rejection Claim Bar Date by the Plan Proponent or Liquidating Trustee.

**Released Parties**: CSC 4540, LLC, 45-50 Vernon LP, JSMB 4540 LLC, and the Examiner, and each of such entities' or persons' respective predecessors, successors, and assigns, and respective current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

**Releasing Parties**: All Persons who have held, hold, or may hold Claims, Interests, Rights of Action, causes of action, or liabilities that are subject to compromise and settlement pursuant to the terms of the Amended Plan or are otherwise discharged, satisfied, stayed, or terminated pursuant to the Amended Plan.

**Rights of Action**: Any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, including actions brought prior to the Petition Date, Avoidance Actions, actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtor that the Debtor or its Estate has, holds, or held at any time in the past, and all claims, suits, or proceedings relating to enforcement of the Debtor's intellectual property rights, including patents, copyrights, and trademarks, and all claims or causes of action seeking recovery of the Debtor's

accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date that the Debtor or its Estate has, holds, or held at any time in the past.

**Schedules**: The Debtor's schedules of assets and liabilities, statements of financial affairs, and such other schedules in accordance with Bankruptcy Code § 521 filed by the Debtor with the Bankruptcy Court, as amended [Dkt. Nos. 1, 10, 12, 13, and 16].

**Second Distribution**: The second Distribution under the Waterfall which shall first be paid from the remainder of the Funding Commitment, and then from the Brownfield Tax Credit.

**Secured Claim**: A Claim secured by a perfected and valid lien or security interest on property of the Debtor's Estate.

**Statutory Fees**: All fees payable under section 1930 of chapter 123 of title 28 of the United States Code.

**Third Distribution**: The third Distribution under the Waterfall.

**Third Party Release**: As defined in Article XVII of the Amended Plan.

**Unsecured Claim**: Any Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Priority Non-Tax Claim.

**U.S. Trustee**: The Office of the United States Trustee for the Southern District of New York; U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, T: 212-510-0500 F: 212-668-2256.

**Unexpired Lease**: A lease of nonresidential real property to which Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**Unimpaired**: Means, with respect to a Class of Claims or Interests, such Class is not Impaired.

**Vernon LP**: 45-50 Vernon LP.

**Voting Classes**: Class 2 and Class 3.

**Voting Deadline**: July 21, 2021 at 4 p.m. ET, the date by which a Claimant or Interest Holder must deliver a ballot to accept or reject this Amended Plan relating to the solicitation of votes with respect to this Amended Plan in accordance with the Conditional Approval Order.

**Waterfall**: The order of priority of distributions in the Second Distribution and Third Distribution (after the Initial Distribution):

**Second Distribution:**

**(i)** *First*

　　*a.* to Allowed Administrative Claims, including the Allowed fees and expenses of the Examiner, to the extent that that such fees and expenses were not paid, for services rendered through the Effective Date, and to the Allowed fees and expenses of the Debtor's Bankruptcy Court approved and retained professionals, to the extent that that such fees and expenses were not paid, for services rendered through the Effective Date; and to all Statutory Fees to the extent that that the Statutory Fees were not paid in full; then

　　*b.* to all fees and expenses of the Liquidating Trustee and the Liquidating Trustee's counsel in connection with the payment of insurance for the Liquidating Trustee—estimated to be $9,000 (all other fees relating to the Liquidating Trust will be incurred post-Effective Date and will be paid in accordance with the Liquidating Trust Agreement); then

　　*c.* to all remaining Allowed General Unsecured Claims (after applicable bar dates), to the extent such Claims were not paid in the Initial Distribution, estimated in the amount of $0.00, apart from Plan Proponent's Claim and the Judgment Claim);

**(ii)** *Second,* reimbursement of 75% of the amounts actually paid from the Funding Commitment—this is an arbitrary number chosen by the Plan Proponents to partially repay their Funding Commitment and to facilitate a partial or full payment for all Allowed Claims upon the Effective Date without waiting for or taking the risk that Brownfield Tax Credit will not be realized, it is not an offset, satisfaction, or deduction from the Allowed Claims of the Plan Proponents;

**(iii)** *Third,* to the extent the Initial Distribution did not pay all Allowed Unsecured Claims (other than the Plan Proponent's Claim and the Judgment Claim) then to Holders of Allowed Unsecured Claims;

**(iv)** *Fourth,* reimbursement of the remaining 25% of the amounts actually paid from the Funding Commitment to the Plan Proponent (for the avoidance of doubt, this payment shall not be an offset, deduction, or satisfaction of the Allowed Claims of the Plan Proponents);

**(v)** *Fifth,* payment in full of the Plan Proponent's Claim and the Judgment Claim;

**(vi)** *Sixth,* if there are any remaining proceeds from the Brownfield Tax Credit, then interest shall be paid at the Federal Judgement Rate to all Holders of Allowed Claims; and finally

**(vii)** *Seventh,* after final allowance or disallowance of any Claims filed after the Effective Date according to the Bar Dates established under this Amended Plan, and subject to any payments required to be made under the terms of the Liquidating Trust, any remaining proceeds shall be distributed 100% to the Holders of Liquidating Trust Class B Interests.

**Third Distribution:**

**(viii)** *Eighth,* if the Plan Proponent or one of its affiliates receives the Brownfield Tangible Property Credit Share, then to the extent that all Allowed Claims have not been paid in full with interest from the Funding Commitment and the Second Distribution, then the Plan Proponent or its designee shall pay

**a.** *first*, all Holders of Allowed Claims shall receive their Pro Rata Share of the proceeds of the Brownfield Tangible Property Credit Share including interest on their Allowed Claims at the Federal Judgment Rate, and then

**b.** *second*, the Plan Proponent shall be repaid in full for the Funding Commitment, and then

**c.** *third*, notwithstanding that the Brownfield Tangible Property Credit Share is not being included in the Liquidating Trust Assets, the Plan Proponent shall distribute any surplus as follows: 85% to the Plan Proponent or its designee, and 15% to the Holders of Allowed Liquidating Trust Class B Interests.

# RULES OF INTERPRETATION AND CONSTRUCTION

**Generally**. For purposes of the Amended Plan: (i) any reference in the Amended Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Amended Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Amended Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

**Time Periods**. In computing any period of time prescribed or allowed by the Amended Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**Miscellaneous Rules**. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Amended Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Amended Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Amended Plan.

**Organizational Chart**. The Debtor, the Plan Proponents, and certain other parties have similar names and various relationships. Attached as Exhibit 2, for illustrative purposes only, is an Organizational Chart created by Plan Proponents and accurate to the best of Plan Proponents' knowledge, information, and belief, showing the relationships among the parties.

# INTRODUCTION

The Plan Proponents, which are creditors of the Debtor,[3] propose the following Amended Plan pursuant to sections 1125 and 1129 of the Bankruptcy Code. The Amended Plan constitutes a liquidating chapter 11 plan for the Debtor and provides (a) for the liquidation and transfer of all of the Debtor's assets with the exception of the Brownfield Tax Credit and the Brownfield Tangible Property Credit Share to the 45-50 Vernon LP in exchange for the Funding Commitment made by 45-50 Vernon LP to make the distributions to creditors provided under this Amended Plan and for funding the potential recovery of the Brownfield Tax Credit, and (b)(1) for the deposit of the Funding Commitment with the Liquidating Trustee (2) for the transfer by the Debtor of the Brownfield Tax Credit to the Liquidating Trustee, and (3) for the transfer of the Brownfield Tangible Property Credit Share to the Liquidating Trustee.

Except as otherwise provided by Order of the Bankruptcy Court, the Initial Distribution will occur on the Effective Date or as soon as practicable thereafter and the Second Distribution may occur at some time thereafter. For the reasons discussed below, the Third Distribution is possible, but highly unlikely.

This Amended Plan includes (a) a brief history of the business operations of the Debtor, (b) a Liquidation Analysis prepared by FTI Consulting, and (c) the mechanism by which the Plan Proponents will satisfy all claims against this Debtor's Estate and enable the Liquidating Trustee to make distributions to Claimants and Interest Holders in accordance with the Waterfall.

The information contained in this document is designed to provide Claim and Interest Holders of the Debtor with information to enable them to make an informed judgment concerning whether to approve the Amended Plan. **If the Bankruptcy Court confirms the Amended Plan, it will be binding on the Debtor, its creditors, equity holders, and other interested parties.**

Generally speaking, a claim or interest is impaired if the legal, contractual, or equitable rights of the holder of the claim or interest is altered by a plan of reorganization or liquidation. A class of creditors accepts a plan when creditors holding two-thirds in amount of such class and more than one-half in number of the claims or interests in such class who actually cast their ballots votes to accept a plan.

In this Case, the Amended Plan contains 2 classes of Claims and one class of Interests. The Amended Plan impairs Holders of the Class 2 Claims and Class 3 Interests. Accordingly, votes will be solicited from Class 2 and Class 3 only.

---

[3] Carrier disputes that the Plan Proponents are creditors of the Debtor and has filed objections to the Plan Proponents' Claims. The Court will hear and determine these objections in conjunction with the Confirmation Hearing.

This is not a complicated case. There are only a handful of creditors and the Plan Proponents believe that there are only two material assets of this Estate: the Brownfield Tax Credit and the CSC Class B Interest, which is the Debtor's Class B Interest in CSC 4540, LLC, a creditor of the Debtor. The Debtor also has $28.04 in the bank and asserts various claims for damages against the Plan Proponents and JSMB MM.

As discussed in Article I, Section B, the Court appointed an Examiner to facilitate the recovery of the Brownfield Tax Credit. The Examiner is in contact with the New York Department of Taxation and Finance and the process to obtain the Brownfield Tax Credit for the benefit of the Estate is underway. It is not known at this time when or if or in what amount the proceeds of the Brownfield Tax Credit will be received by the Estate.

The Debtor's Schedules also list the Brownfield Tangible Property Credit Share as an asset of the Debtor. The Debtor's Managing Member, Brent Carrier, believes that this asset is potentially worth $10 million to the Estate. For the reasons discussed in Article I, Section C, below, and as evidenced by the Liquidation Analysis prepared by FTI Consulting, which is attached to this Amended Plan as Exhibit 1, the Plan Proponents believe recovery of this asset is highly speculative, with conditions precedent outside Debtor's control, and as such there is no value to the Brownfield Tangible Property Credit Share. But if there is, this Amended Plan provides for the distribution of any recovery from this potential asset to the creditors of this Estate and, if there is a surplus after payment of all Allowed Claims at par plus interest at the Federal Judgment Rate, for a distribution of this surplus to 85% to the Plan Proponents and 15% the Holders of Liquidating Trust Class B Interests. A fulsome discussion of the Brownfield Tangible Property Credit and the basis for the distribution of any recovery therefrom is contained in Article I, Section C.

Although a number of claims were scheduled by the Debtor, all but one of the scheduled claims—the Carrier Claim, a $1,500,000 unsecured claim of the Debtor's Manager—were filed as contingent, unliquidated, or disputed. No basis was provided in the Schedules for the Carrier Claim. Brent Carrier has stated on the record that the Carrier Claim is a salary and performance claim for services rendered by him to the Debtor. Based on the lack of any evidentiary support for this claim in the Debtor's Schedules or otherwise, the Plan Proponents will be filing an objection to the Carrier Claim to be heard in conjunction with the Confirmation Hearing. The Plan Proponents have obtained an order from the Court [Docket No. 66] to take the Debtor's and Brent Carrier's depositions and obtain documents under Bankruptcy Rule 2004 to determine if the Carrier Claim and certain other payments made to Brent Carrier by the Debtor have any validity.

Other than the Carrier Claim, the only Claim scheduled without any objection by the Debtor, all creditors were required to file a proof of claim on or before the Bar

Dates order to be eligible to receive a Distribution from this Estate. As of the Bar Dates, a total of 8 claims were filed against the Debtor:

i. Four Unsecured Claims were filed by the Plan Proponents and JSMB MM. These Claims were filed as unliquidated, but are now estimated by the Plan Proponents to be obligations of the Debtor in the amounts of: (a) creditor CSC: no less than $2,521,786; (b) creditor Vernon LP: no less than $22,521,558; and (c) creditor JSMB: no less than $29,475. The Claim filed by JSMB MM remains unliquidated at this time and will be withdrawn.

ii. One Unsecured Claim was filed by former counsel to the Debtor in the amount of $85,474.50.

iii. One Unsecured Claim was filed on account of a judgment obtained against the Debtor in the amount of $216,589.96. This Claim is now owned by an affiliate of the Plan Proponents and for the avoidance of doubt, with respect to distributions under this Amended Plan, shall not be considered to be Unsecured Claims of Plan Proponents.

iv. One Unsecured Claim was filed by the Internal Revenue Service in the amount of $23,247.13.

v. One Claim was filed by the New York State Department of Taxation and Finance in the secured amount of $3,137.56, the priority amount of $34.10, and the non-priority unsecured amount of $600.

Consequently, the total amount of Unsecured Claims filed or that the Plan Proponents believe will be Allowed against the Debtor is approximately $25.4 million (not including the Carrier Claim). In addition, there is $3,171.66 in secured and Priority Claims.

**However, other than the Claim of Brent Carrier and the Plan Proponents, the total amount of Unsecured Claims asserted is $325,911.59.**

Under this Amended Plan, in exchange for the transfer of all assets, Rights of Action, claims, and all property of the Estate as defined in Section 541 of the Bankruptcy Code, other than the Liquidation Trust Assets—which are to be distributed by the Liquidating Trustee in accordance with the Waterfall—to the Plan Proponent or its designee on the Effective Date, the Plan Proponent will provide the Liquidating Trustee with the Funding Commitment. This will create what is commonly known as a "pot plan." The Plan Proponent believes that funding this "pot" will provide sufficient liquidity to enable the Liquidating Trustee to make the First Distribution. The Plan Proponent or its designee will also provide funding for the Examiner and the Liquidating Trustee as described below.

In addition, in the event, for the reasons described below, that the Funding Commitment is not sufficient to pay all Allowed Unsecured Claims in full, all Allowed Unsecured Creditors will share in the recovery from the Brownfield Tax Credit—estimated to be approximately $1.9 million—for any deficiency in payment from the Funding Commitment. This will, the Plan Proponents believe, result in full payment of all Allowed Unsecured Claims.

In the February Decision and in other proceedings before this Bankruptcy Court, the following determinations were made, altering some of the numbers contained in the Amended Plan to the benefit of creditors of the Estate:

    i.    The Carrier Claim is disallowed and expunged.

    ii.    The claims of Vernon LP and JSMB are disallowed.

    iii.    The claim of JSMB MM was voluntarily withdrawn.

    iv.    The claim of CSC is Allowed in the amount of $684,329 (which amount is subject to further review by the Court).

    v.    The Judgment Claim is Allowed in the amount of $216,589.56.

No objections were filed to the remaining claims and accordingly, they are Allowed. Consequently, the total amount of Secured, Priority, and Unsecured Claims that will receive distributions under the Amended Plan is $1,012,222.85.[4]

In addition to the Claims discussed above, based upon information obtained by the Plan Proponent after the February Decision, the Plan Proponent estimates that the professional fee claims ("**Professional Fee Claims**") for administration of this Bankruptcy Case through the Effective Date will be:

    i.    Counsel for the Debtor in the amount of $60,000; and

    ii.    Counsel for the Examiner and fees of the Examiner in the approximate amount of $350,000.

Accordingly, the total amount of funds estimated to be needed to satisfy the Allowed Claims of all creditors of this Estate and Professional Fee Claims as of the Effective Date is: $1,422,222.85. This amount does not include Statutory Fees or any claims filed after the Effective Date according to the Bar Dates established under this Amended Plan, which claims are not required to be filed until thirty days after the Effective Date.

---

[4] On June 7, 2021, the IRS amended its proof of claim, Claim No. 2, to reduce the amount claimed to $22,057.13. This is the amount used in the total distributions calculation.

The Funding Commitment of $630,000 will be sufficient to:

(i)    pay the following Allowed claims in full on or shortly after the Effective Date of the Amended Plan as follows:

    a.  Reserve for Allowed Administrative Claims and Statutory Fees as follows:

        i.  Debtor's counsel including fees to be incurred by Debtor's counsel through the Effective Date in the estimated amount of $60,000.

        ii.  The Examiner and her counsel through the Effective Date in the estimated amount of $350,000.

        iii.  Statutory Fees and expenses of the United States Trustee in the estimated amount of approximately $5,000.

    b.  Payment of Allowed Secured Claims in the amount of $3,137.56.

    c.  Payment of Allowed Priority Claims in the amount of $34.10.

    d.  Payment of Allowed Unsecured Claims (other than the Plan Proponent's Claim and the Judgment Claim) in the amount of $111,304.29.

(ii)    After payment of the amounts in (b) through (d) above, the balance of the Funding Commitment, estimated to be approximately $518,695.71 will pay all Allowed Administrative Claims and Statutory Fees in full (including the reserved amount of $415,000).

    a.  In its Schedule G, the Debtor lists two executory contracts: CRE Consulting Agreement dated Nov. 15, 2013, and Limited Liability Company Agreement dated Nov. 15, 2013. To the extent these are executory contracts, the Plan Proponent rejects both contracts under the Amended Plan. The counterparties to these contracts will have 30 days after the Effective Date to file claims arising from the rejection. These claims, if filed, are treated as Unsecured Claims. The Plan Proponent cannot conclusively quantify, at this time, the possible amount of any such Rejection Claim, but estimates such claims in the amount of $0.00 for Plan purposes.

**As stated, in the event, and only in the event, that the Funding Commitment is not sufficient to pay all Allowed Unsecured Claims in full, Holders of Allowed Unsecured Claims, will receive, in addition to the Initial Distribution, additional distributions from the Liquidating Trust Assets (which include the proceeds of the Brownfield Tax Credit) and from the Plan Proponent or its affiliate from its recovery, if there is one, from the**

**Brownfield Tangible Property Credit Share, to be made in accordance with the Waterfall (the aggregate amount of Allowed Unsecured Claims excluding the Plan Proponent's Claim and the Judgment Claim is $108,132.63. This will result in a balance of the Funding Commitment in the amount of $103,695.71 which will be used, if necessary, to fund the Second Distribution).**

Before soliciting acceptances of a proposed plan of reorganization, section 1125 of the Bankruptcy Code requires that a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of such chapter 11 plan. This Amended Plan is being submitted in accordance with such requirements. This Amended Plan provides information about:

- the Debtor's corporate history and corporate structure, business operations, and prepetition capital structure and indebtedness;
- events leading to the Chapter 11 Case;
- significant events in the Chapter 11 Case;
- the classification and treatment of Claims and Interests under the Amended Plan, including who is entitled to vote and how to vote on the Amended Plan;
- certain important effects of confirmation of the Amended Plan;
- releases contemplated by the Amended Plan;
- the statutory requirements for confirming the Amended Plan;
- certain risk factors Holders of Claims and Interests should consider before voting to accept or reject the Amended Plan and information regarding alternatives to Confirmation of the Amended Plan; and
- certain United States federal income tax consequences of the Amended Plan.

The Plan Proponents believe this Amended Plan contains "adequate information" to enable a hypothetical reasonable investor to make an informed judgment about the Amended Plan and complies with all aspects of section 1125 of the Bankruptcy Code.

**IN THE OPINION OF THE PLAN PROPONENTS, THE TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE AMENDED PLAN CONTEMPLATES A GREATER RECOVERY THAN IS LIKELY TO BE ACHIEVED UNDER ANY ALTERNATIVE FOR THE LIQUIDATION OF THE DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OR UNDER CHAPTER 7 OF THE BANKRUPTCY CODE. ACCORDINGLY, THE PLAN PROPONENTS BELIEVE THAT CONFIRMATION OF THE AMENDED PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S CREDITORS AND INTEREST HOLDERS AND RECOMMENDS THAT ALL HOLDERS OF CLAIMS AND INTERESTS VOTE TO ACCEPT THE AMENDED PLAN.**

# I.

## BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor was formed as a single purpose entity on March 14, 2011, for the purpose of acquiring and developing the Property, a heavily contaminated post-industrial parcel of real property located at 45-40 Vernon Boulevard, Long Island City, New York—the site of the old Paragon Paint Factory.

The Debtor is operated and controlled by its principal and managing member, Brent Carrier, who is the ultimate beneficial owner of approximately 90% of the Debtor.[5]

On November 15, 2013, the Debtor, Manresa Limited (Vernon LP's predecessor in interest), JSMB 4540 LLC, and JSMB MM, formed CSC pursuant to the LLC Agreement for purposes of, *inter alia*, developing, owning, leasing, and selling the Property.

The LLC Agreement lists the Class A Members of CSC as Vernon LP and JSMB. Debtor is listed as the sole Class B Member, and JSMB MM is the sole Class C Member. Prior to the formation of CSC, the Debtor solely owned the Property and, in need of capital, borrowed $7,030,000 from an affiliate of the soon-to-be Class A members while the parties negotiated the LLC Agreement. Upon the formation of CSC, the Debtor contributed the Property to CSC, in exchange for its 100 percent of the Class B Units in CSC and satisfaction of the Debtor's loan from funds contributed by the Class A members.

To be clear, the Debtor does not own the Property. The Debtor owns the Class B membership interest in non-debtor CSC that has owned the Property in its wholly owned affiliate CSC 4540 Property Co. LLC since November 2013.

The Debtor's Class B membership interest does not provide the Debtor (or Carrier) with any significant governance, liquidation, voting, control, or other rights in the Property itself. Moreover, until such time as the Property is rezoned for residential development (which it currently is not), the Class B interest does not entitle the Debtor to distributions until the Class A members have received a return of capital and a preferred return which is currently in excess of $90 million, far in excess of the Property's value. And for this reason, as demonstrated in the

---

[5] For the sake of clarity, CRE Vernon Member owns 50% of the Debtor. Carrier owns 80% of CRE Vernon Member, which has seven other members who cumulatively own 20% of CRE Vernon Member. Those seven members therefore indirectly own 10% of the Debtor, and Carrier personally owns the remaining 90% of the Debtor (50% directly in his personal capacity, and 40% indirectly through his 80% interest in CRE Vernon Member).

#11012137 v7 \026143 \0003

Liquidation Analysis prepared by FTI Consulting, the Class B interest is of *de minimis* value. Management and control of the Property resides solely in the Class A members. The only material value the Class B interest has is in its potential to recover the Brownfield Tax Credit.

Carrier disputes FTI Consulting's valuation of the Class B interest. Carrier's basis for such dispute is unclear.

## B. The Brownfield Tax Credit

Due to its history as a paint factory, the Property was a brownfield site that required significant environmental remediation in order to be developed. The New York Environmental Conservation Law defines a brownfield site as "any real property where a contaminant is present at levels exceeding the soil cleanup objectives or other health-based or environmental standards, criteria or guidance adopted by the department that are applicable based on the reasonably anticipated use of the property, in accordance with applicable regulations." N.Y. Envtl. Conserv Law § 27-1405(2). Environmental remediation of brownfield sites is incentivized by New York State pursuant to its Brownfield Cleanup Program, which provides, *inter alia*, tax credits to private-sector applicants who cleanup and redevelop these sites. *See* N.Y. Tax Law § 21 (listing tax credits for site preparation and cleanup of a site as the "site preparation credit component," tax credits for the redevelopment of a site as the "tangible property credit component," and tax credits related to groundwater remediation as the "on-site groundwater remediation component"). The tax credits are calculated as a percentage of qualifying expenditures incurred by the applicants in the cleanup and redevelopment processes. Specifically, the applicant becomes eligible to obtain a cash rebate totaling 28% of the qualifying remediation expenditures in the form of brownfield tax credits.

Importantly, these tax credits are "refundable," meaning that taxpayers who remediate a brownfield property receive a tax refund, rather than an actual tax credit, from the state. In other words, assuming the taxpayer's brownfield tax credit is greater than his/her/its total New York State tax liability, the taxpayer receives the balance of the credit as a tax refund in cash. *Id.* at § 606(dd)(2). To qualify for Brownfield Tax Credits, "[a] person who seeks to participate in th[e Brownfield Cleanup Program] shall submit a request to the [New York State Department of Environmental Conservation ('DEC')]," *id.* § 27-1407(1); sign a brownfield site cleanup agreement with the State of New York, *see id.* § 27-1409; and obtain a certificate of completion ("Certificate of Completion") for satisfaction of the remediation requirements from the DEC, *see id.* § 27-1419(3). Issuance of a Certificate of Completion by the DEC affirms that the listed certificate holders ("Certificate Holders") are entitled to the receipt of brownfield tax credits, calculated as a percentage of the qualifying remediation expenditures, for the site preparation credit component. Accordingly, the LLC Agreement provides that CSC may:

([O]n its own behalf or through [the] wholly-owned [CSC affiliate, CSC 4540] Property Co [, LLC]) shall become a party to the Brownfield Cleanup Agreement with respect to the [Property] in order to be admitted into the Brownfield Cleanup Program. [CSC] (on its own behalf or through [the] wholly-owned Property Co[.]) ***shall apply or cause [the Debtor][6] or the Affiliate of [the Debtor]*** under the Entitlements Agreement[7] ***to apply, for Brownfield Tax Credits*** in connection with certain site preparation and cleanup, groundwater remediation, and tangible property development costs related to the Project.

If the Company makes any expenditures qualifying for Brownfield Tax Credit, then one-half of such qualifying expenditures and the related Brownfield Tax Credits shall be allocated among the Class A Members, pro rata, in accordance with their respective Class A Units, **and the other half of such expenditures and the related Brownfield Tax Credits shall be allocated to the Class B Member**…

(*Id.* at § 8.2(b)) (emphasis added).

In other words, one-half of any Brownfield Tax Credits earned by CSC are allocated to the Class B Member, the Debtor in this case, and the other half are allocated to the Class A Members, Vernon LP and JSMB.

Importantly, because Debtor is a limited liability company that has not elected to be treated as a corporation for tax purposes, any Brownfield Tax Credits received by it from the State of New York will—based upon the tax laws and advice Plan Proponents have received from the Office of the Attorney General of the State of New York—be paid directly to its principal and managing member. This means that because of the tax process, Carrier, as the principal and managing member of the Debtor—the sole Class B Member of CSC—applies on behalf of the Debtor for Brownfield Tax Credits and will, on behalf of the Debtor, personally receive all the

---

[6] The Debtor is referred to as "CRE" throughout the LLC Agreement.

[7] At the same time as the parties executed the LLC Agreement, CRE Vernon Consulting, LLC ("**CRE Consulting**"), an affiliate of the Debtor, in which Carrier is also the principal, entered into a consulting agreement with CSC (the "**Entitlements Agreement**"). Pursuant to the Entitlements Agreement, CRE Consulting was to provide certain services relating to the procurement of certain permits, variances, approvals and, most importantly, obtain the Brownfield Tax Credits for the Project ("**Entitlements**"). For its services, CRE Consulting was to be paid $50,000.

Brownfield Tax Credits due to the Debtor in the form of a refund (the "**Tax Refund**"). It does not, as the Bankruptcy Court has ruled, mean that the Tax Refund belongs to Carrier.

Environmental remediation of the Property was successfully completed in 2016, with nearly all costs from November 2013 onward borne by CSC, more specifically, by CSC's wholly-owned affiliate and the Property's owner, CSC 4540 Property Co., LLC. A Certificate of Completion was issued by the DEC on December 15, 2016. The Certificate of Completion was thereafter amended and reissued by the DEC on April 24, 2019 to include the Property owner, which was improperly left off the initial certificate as a Certificate Holder. This amended Certificate of Completion means that CSC 4540 Property Co., LLC is entitled to receive Brownfield Tax Credits, totaling 28% of the qualifying remediation expenditures incurred in connection with the same. Following this amendment, and pursuant to the LLC Agreement, one half of CSC 4540 Property Co., LLC's site preparation and cleanup expenditures qualifying for the Brownfield Tax Credits were allocated to the Class B Member, the Debtor. The qualifying remediation expenditures allocated by CSC to the Debtor total $6,978,422 (one-half of CSC 4540 Property Co., LLC's anticipated total qualifying remediation expenditures).

This allocation was effectuated through the issuance of an amended 2016 Schedule K-1 from CSC to the Debtor. The amended 2016 Schedule K-1, which is subject to an ongoing audit, provides that the Debtor stands to receive a Tax Refund of approximately $1,953,958 (exactly 28% of the $6,978,422) from the brownfield tax credits from New York State in connection with the preparation and cleanup of the Property. Notably, however, Carrier's testimony at the Section 341 Hearing indicated that the Tax Refund could be worth as much as $2.3 million, 28% of the $8.3 million of the 2016 expenditures that Carrier stated were applied for by the Debtor.

On its Schedules, the Debtor listed $13.5 million in brownfield tangible property credits related to redevelopment of the Property as an asset of the Estate. (*See* Docket No. 10, at 3). Section C below discusses the Brownfield Tangible Property Credit Share. Despite scheduling the Brownfield Tangible Property Credit Share, as an asset if the Estate, the Debtor did not schedule the Brownfield Tax Credit as an asset of the Estate.

Believing that had to be an oversight by the Debtor, counsel to the Plan Proponents reached out to the Debtor's counsel to inquire whether Carrier would sign a formal stipulation, agreeing to transfer and deliver any Brownfield Tax Credit received by him into the Estate "for appropriate estate purposes in accordance with the provisions of the Bankruptcy Code." Carrier, however, refused to sign the stipulation or otherwise commit to deliver the Brownfield Tax Credit in connection with the site preparation and cleanup to the Estate. He instead took the position during the section 341 meeting of creditors that the Brownfield Tax Credit was not

the property of the Estate because it was already "earned and allocated," although not paid. Specifically, he contended that although allocated to the Debtor pursuant to the LLC Agreement, the Brownfield Tax Credit and ensuing cash refund became his, when he, as managing member of the Debtor, unilaterally decided that the tax credits belonged to him. Carrier took this position notwithstanding that the application for the Brownfield Tax Credit is on behalf of the Debtor, not on behalf of Carrier himself.

Faced with Carrier's refusal to agree to deposit the Brownfield Tax Credit into the Estate when received, the Plan Proponents commenced an action before the Bankruptcy Court seeking a declaration that the Brownfield Tax Credit was property of the Estate.

On March 8, 2021, the Bankruptcy Court determined that the Brownfield Tax Credit was property of the Estate, enjoined Carrier from dissipating, using, or disposing of the Brownfield Tax Credit, and ordered turnover of the Brownfield Tax Credit, when received by Carrier, to the Estate.

On March 31, the Bankruptcy Court entered an order appointing the Examiner to take all actions necessary to obtain the Brownfield Tax Credit on behalf of the Estate.

### C.     The Brownfield Tangible Property Credit Share

On its Schedules, the Debtor lists $13.5 million in brownfield tangible Property credits related to redevelopment of the Property as an asset of the Estate. Unlike the Brownfield Tax Credit, Carrier does not dispute that this credit is property of the Estate. However, it is highly unlikely that the Debtor will ever see any recovery on account of this credit.

The Brownfield Tangible Property Credit Share is the Debtor's 50% distributive share (pursuant to the LLC Agreement) of CSC's tangible property credits (pursuant to NYS Tax Law Section 21(a)(3)) which are actually collected and received by the Debtor's equity holders, net of all actual out-of-pocket professional fees (for example, accountants fees to manage the audit) reasonably necessary to collect such tangible property credits which were incurred by the Debtor (or Debtor's pro-rata share of such costs in the event tax credit claimants share such professionals).

It is critical to understand that the Debtor's Brownfield Tangible Property Credit Share can only be realized if, and only if, CSC is entitled to such credits. Moreover, as the Class B interest holder, the Debtor has absolutely no control, ability, or authority to cause CSC to become eligible for such credits.

As Carrier has acknowledged, CSC's entitlement to a Brownfield Tangible Property Credit is subject to a critical condition precedent: CSC—not the Debtor—must apply for this credit and it can only apply for the credit if qualified tangible property is placed into service on the Property by the year end 2026. The Plan Proponents confirm that no plans for construction are underway. The Property is not zoned for residential construction. CSC has applied unsuccessfully since 2013 to rezone the Property numerous times. No financing has been arranged for any construction and CSC does not have sufficient capital to finance the redevelopment.

Accordingly, it remains unclear and highly speculative that the Brownfield Tangible Property Credit will ever be earned. It is also important to restate, that whether or not a structure is built is not within the Debtor's or Carrier's control; it is solely in the control of the Class A members of CSC. Consequently, and for the reasons stated above, it is highly unlikely that CSC will be eligible for such credits therefore the Plan Proponents attribute no value to this interest. **To be clear, the Brownfield Tangible Property Credit Share that is property of the Debtor's Estate is solely the Debtor's potential 50% distributive share and not any portion of other Members of CSC's separate share and rights to its tangible property credits pursuant to NYS Tax Law § 21(a)(3) and the CSC LLC Agreement. Nothing about this Case nor any action taken in this Case shall or may have any impact on CSC's rights and entitlements, or the rights and entitlements of CSC's other members to its or their tangible property credits or how it or they manage or conduct CSC's business or the Property.**

Despite the extremely remote possibility of any recovery, this Amended Plan provides that the Brownfield Tangible Property Credit Share shall be transferred to the Liquidating Trust on the Effective Date and that any recovery from this asset shall be distributed in accordance with the Waterfall.

It is important to understand that under this Amended Plan, the Plan Proponent or its designee shall acquire all assets of the Estate—other than the Brownfield Tax Credit—including the Debtor's Class B Interest in CSC which is the source of and otherwise entitles it to any potential recovery from the Brownfield Tangible Property Credit Share. Because of this, if the conditions precedent to the recovery of the Brownfield Tangible Property Credit Share discussed above were satisfied, all proceeds of any recovery on account of the Brownfield Tangible Property Credit Share would flow to the Plan Proponent.

However, under this Amended Plan, the Plan Proponents have allowed for a portion of the potential economic benefit (derived exclusively from Brownfield Tangible Property Credit Share)—not any governance or other rights—that would flow exclusively to them from their post-Effective Date ownership of the Class B Interest to go into the Liquidating Trust in order to ensure (i) the full payment of all Allowed Claims with interest of all creditors of the Estate, and (ii) to a distribution of

15% of any remaining surplus to Liquidating Trust Class B Interest Holders, the former equity holders of the Debtor. 85% would go to the Plan Proponents.

Although there is no requirement whatsoever that the Plan Proponents provide the economic benefit from the Brownfield Tangible Property Credit Share in order to facilitate the Third Distribution, the Plan Proponents are doing so. The Plan Proponent or its designee has funded the Funding Commitment (and with it, funded the pursuit of the Brownfield Tax Credits) which practically speaking finances a material payment to Creditors, with the only recourse for the Plan Proponent to recoup such funds against the Brownfield Tax Credits or Brownfield Tangible Property Credit Share. Accordingly, the Plan Proponent is entitled to receive the vast majority of Brownfield Tangible Property Credits if and when they are collected. The basis for 15% to the Liquidating Trust Class B Interest Holders is that the Plan Proponents believe this would be fair.

## II.

## EVENTS DURING THE CHAPTER 11 CASE

### A.    Commencement of the Case and the Debtor's Postpetition Activities

On August 5, 2020, the Debtor filed its voluntary Petition under chapter 11 of the Bankruptcy Code. Since then, the Debtor has been operating as Debtor-in-Possession.

Over the course of several weeks thereafter, the Debtor filed its Schedules in which the Debtor lists all of its assets and liabilities, including, inventory, leases, contracts, obligations, debts, creditors, equity holders, litigations, and liabilities, as well as certain other financial and operational material to provide creditors and the Bankruptcy Court with a snapshot of the entire financial picture and circumstances of the Debtor on the day the Chapter 11 Case was filed.

On December 17, 2020 the Debtor filed an application to retain Bruce Bronson as counsel for the Debtor. The application is pending.

On December 17, 2020 the Debtor filed a motion to set the Bar Date. The motion was granted and an order entered on January 13, 2021.

Operating in Chapter 11 requires the Debtor to make various periodic reports and filing. The Debtor filed its last operating report for the month of March 2021, and is currently in default of its reporting obligations to the U.S. Trustee.

Other than this and responding to the Motion for Summary Judgment and related proceedings, the Debtor has done nothing in this Case.

**B.     The Motion for Summary Judgement and the Examiner Appointment**

On November 9, 2020, the Plan Proponents and JSMB MM commenced an adversary proceeding against the Debtor and filed the Motion for Summary Judgment.

On March 8, 2021, the Bankruptcy Court entered the Order Granting the Motion for Summary Judgment and determined that the Brownfield Tax Credit was property of the Estate, enjoined Carrier from dissipating, using, or disposing of the Brownfield Tax Credit, and ordered turnover of the Brownfield Tax Credit, when received by Carrier, to the Estate.

On March 31, 2021, the Bankruptcy Court entered an order appointing the Examiner to take all actions necessary to obtain the Brownfield Tax Credit on behalf of the Estate. The Examiner has reported that she has been in discussions with the Plan Proponents and Carrier, has received requested material from them, is in contact with the DTF, and that the process to obtain the Brownfield Tax Credit for the benefit of the Estate is underway. It is not known at this time when or if or in what amount the proceeds of the Brownfield Tax Credit will be received by the Estate.

**C.     Discovery and the Plan Process**

On April 14, 2021, Plan Proponents submitted its initial combined disclosure statement and plan of liquidation, with conditional approval of the disclosure statement—along with additional relief—ultimately being considered on June 14, 2021.

On June 7, 2021, the Court entered an order authorizing the Plan Proponents to depose and seek discovery from the Debtor and Carrier under Bankruptcy Rule 2004 to examine the Debtor's Schedules and the Carrier Claim and to seek such other information as is relevant to the Amended Plan and the plan process. This discovery is expected to be complete before the Confirmation Hearing.

At a hearing held on June 14, 2021, the Court considered the Plan Proponents' application for the Conditional Approval Order and stated that it approved the relief requested, *inter alia*, conditional approval of the form of Ballot, and scheduling of certain dates and deadlines relevant to the plan process, subject to certain modifications being made in the Amended Plan.

On June 23, 2021, the Plan Proponents submitted the Amended Plan to the Court and various parties in interest and on June 23, 2021, the Court entered the Conditional Approval Order authorizing the Plan Proponents to serve the Amended Plan.

# III.

## THE CHAPTER 11 PLAN PROCESS AND
## CONFIRMATION REQUIREMENTS

In general, a chapter 11 plan (i) divides claims and equity interests into separate classes, (ii) specifies the property that each class is to receive under the plan, and (iii) contains other provisions necessary to the reorganization or liquidation of the debtor. Under the Bankruptcy Code, "claims" and "equity interests" are classified rather than "creditors" and "shareholders" because such entities may hold claims or equity interests in more than one class. For purposes of this Amended Plan, the term "Holder" refers generally to the holder of a Claim or Interest, respectively, in a particular Class under the Amended Plan.

To the extent the legal, contractual, or equitable rights with respect to any claim or interest asserted against a debtor are altered, modified, or changed by treatment proposed under the plan, such claim or interest is considered "Impaired," and the holders of such claim or interest are entitled to vote in favor or against the plan.

A chapter 11 plan may specify that certain classes of claims or equity interests are either to be paid in full upon effectiveness of the plan or are to remain unchanged by the plan. Such classes are referred to as "unimpaired," and because of such favorable treatment, the holders in such classes are deemed to accept the plan. Accordingly, it is not necessary to solicit votes from the holders of claims or equity interests in such classes. A chapter 11 plan also may specify that certain classes will not receive any distribution or property or retain any claim against a debtor. Such Classes are deemed to have rejected the plan and, therefore, need not be solicited to vote to accept or reject the plan.

Here, the Plan Proponents have proposed an Amended Plan that provides for a meaningful distribution to General Unsecured Creditors through the Funding Commitment and the Second and Third Distributions.

# IV.

## TREATMENT, CLASSIFICATION, AND
## IMPAIRMENT OF CLAIMS AND INTERESTS

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class and Description | Impairment | Entitlement to Vote |
|---|---|---|
| **Class 1** – Secured and Priority Tax Claims | Unimpaired | No; deemed to accept. |
| **Class 2** – General Unsecured Claims | Impaired | Yes. |
| **Class 3** – Interests in Debtor | Impaired | Yes. |

    **A.**     **Summary**. The classifications of Claims and Interests in this Article IV shall apply for all purposes, including voting, confirmation, and distribution pursuant to the Amended Plan, pursuant to Bankruptcy Code §§ 1122 and 1123(a)(1). A Claim or Interest shall be deemed classified in a particular Class only to the extent that: (i) the Claim or Interest qualifies within the description of that Class (and shall be deemed classified in a different Class to the extent that any portion of such Claim or Interest qualifies within the description of such different Class), (ii) the Claim or Interest is Allowed as of the Effective Date, and (iii) the Claim or Interest has not been paid or otherwise satisfied prior to the Effective Date.

    **B.**     **Classification**. The Claims and Interests against the Debtor are classified as identified in the table in this Article IV.

### 1. Class 1 – Tax Claims

<u>Classification</u>: Class 1 shall consist of the Secured Claims and Priority Tax Claims.

<u>Estimated Amount of Claims in Class</u>: $3,171.66

<u>Treatment</u>: Except to the extent that a Holder of an Allowed Secured Claim or Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by the Debtor prior to the Effective Date, each holder of an Allowed Secured Claim or Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Secured Claim and any liens securing such Claim, or such Allowed Priority Tax Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, Cash in the amount of such Allowed Secured Claim or Allowed Priority Tax Claim on, or as soon as practicable after, the latest of: (a) the Effective Date and (b) the date such Allowed Secured Claim or Allowed Priority Tax Claim becomes an Allowed Claim.

### 2. Class 2 – General Unsecured Claims

<u>Classification</u>: Class 2 shall consist of the Unsecured Claims.

<u>Estimated Amount of Claims in Class</u>: $1,009,051.19

<u>Treatment</u>: Except to the extent that a Holder of an Allowed General Unsecured Claim in Class 2 agrees to a less favorable treatment or has been paid by the Debtor prior to the Effective Date, each holder of an Allowed General Unsecured Claim in Class 2 shall receive, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim:

(i)     its Pro Rata Share of the balance remaining in the Funding Commitment after satisfaction of all Class 1 Claims, Administrative Claims, and Professional Fee Claims, as its Initial Distribution, and to the extent that amount is not sufficient to pay an Allowed Class 2 Claim in full,

(ii)    then such amounts under the Waterfall that when combined with the amount paid to each Holder of an Allowed Unsecured Claim from the Initial Distribution, will result in full payment of each Unsecured Creditor's Allowed Claim.

The Plan Proponents have agreed to defer payment on their Allowed Claims until the Second Distribution and Third Distribution and not receive payment on account of their Allowed Claims from the Funding Commitment; the Allowed Claim of the Plan Proponents shall be paid in accordance with the Waterfall.

### 3. Class 3 – Interests

<u>Classification</u>: Class 3 shall consist of equity interests in the Debtor.

<u>Estimated Amount of Claims in Class</u>: $0

<u>Treatment</u>: On the Effective Date, the Interests in the Debtor are cancelled and the holders of the Interests shall not be entitled to, and shall not receive or retain, any property on account of such Interests under the Amended Plan, except that the Holders of Allowed Interests in Class 3 shall become Holders of Liquidating Trust Class B Interests.

To the extent an Interest Holder desires to become a Holder of a Liquidating Trust Class B Interest, such Interest Holder must file a proof of Interest on or before Interest Holder's Bar Date, which is 30 days after the Effective Date. Any Interest Holder failing to file a proof of Interest on or before the Interest Holder's Bar Date shall be forever barred from asserting such Interest or any Claim arising from such Interest against the Debtor, its Estate, or the Liquidating Trust and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Interest or Claim relating to such Interest.

# V.

## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND OTHER CLAIMS

**A.** **Introduction**. As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims are unclassified claims, not considered Impaired and not entitled to vote on the Amended Plan, because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. These non-voting Claims shall be treated separately as unclassified Claims as set forth in this Article V.

**B.** **Administrative Claims in General**. Except to the extent that a holder of an Allowed Administrative Claim agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive Cash in an amount equal to such Allowed Claim on or shortly after the Effective Date. Notwithstanding the foregoing, Professional Fee Claims of Professionals retained by the Debtor, the Examiner, and the Examiner's retained professionals, shall be paid by the Liquidating Trustee from the Funding Commitment when their fees are approved by order of the Bankruptcy Court after submission of an application for allowance of compensation.

**C.** **Bar Date for Administrative Claims**. Proofs of Administrative Claims or requests for the allowance and payment of Administrative Claims, other than Professional Fees, for the period from the Petition Date through the Effective Date must be filed within 30 days of the Effective Date. Any entity failing to file a proof of Administrative Claim or request for payment thereof on or before the Administrative Claims Bar Date shall be forever barred from asserting such Claim against the Debtor, its Estate, or the Liquidating Trust, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

**D.** **Statutory Fees**. On or before the Effective Date, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid in full in Cash. All unpaid fees due and payable under 28 U.S.C. § 1930 shall be paid from the Liquidating Trust until this Chapter 11 Case is closed, converted, or dismissed and if necessary, shall reduce the amount paid to Class 2 creditors. Under no circumstances will the Plan Proponents be liable to make any payments to any person, agency, or entity from any source other than the Funding Commitment, except as may be otherwise agreed with the Liquidating Trustee in writing.

**E.** **Professional Fees.**

**1. Time for Filing and Allowance**. All Professionals requesting compensation or reimbursement of expenses for services rendered prior to the Effective Date must file and serve pursuant to the Bankruptcy Code and applicable rules, an application

for final allowance of compensation and reimbursement of expenses no later than 30 days after the Effective Date or be forever barred from asserting such claims against the Estate, the Debtor, or the Liquidating Trust, or their respective successors or assigns. Professional Fee Claims shall be Allowed Professional Fee Claims only to the extent allowed by Final Order of the Bankruptcy Court. Only Allowed Professional Fee Claims shall be paid pursuant to the Amended Plan. Any objection to Professional Fee Claims shall be filed on or before the date specified in the application for final compensation.

**2. Payment of the Examiner's Fees Post Effective Date.** The Examiner's fees and expenses for services rendered after the Effective Date shall be paid (i) in the event of a recovery of the Brownfield Tax Credit and the deposit of same into the Liquidating Trust, solely from the proceeds of the Brownfield Tax Credit in accordance with the Waterfall, (ii) in the event there is no recovery of the Brownfield Tax Credit, by the Plan Proponents, or any one of them, in an amount to be agreed upon between the Plan Proponents and the Examiner and disclosed in the Plan Supplement.

**VI.**

**<u>IMPLEMENTATION OF THE AMENDED PLAN</u>**

Prior to the Effective Date, the Plan Proponent or its designee shall deposit the Funding Commitment into escrow with Counsel for the Plan Proponents. On or shortly after the Effective Date, Counsel for the Plan Proponents will deliver the Funding Commitment to the Liquidating Trustee to be deposited in an account of the Liquidating Trust for distribution in accordance with the Waterfall.

On the Effective Date, the Brownfield Tax Credit shall vest in the Liquidating Trust for distribution in accordance with the Waterfall.

In the event that the Brownfield Tax Credit has not been received into the Estate by the Effective Date, the work of the Examiner will continue until the funds are received or there is a final determination by DTF that no amounts are due.

**VII.**

**<u>ACCEPTANCE OR REJECTION OF THE AMENDED PLAN<br>AND CERTAIN RISK FACTORS</u>**

A Class shall have accepted the Amended Plan if it is accepted by at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claims in such Class (excluding Insiders) that have cast ballots with respect to the Amended Plan. Only those votes cast by holders of Allowed Claims or Interests shall be counted in

determining whether acceptances have been received in sufficient number and amount to obtain confirmation.

Class 1 is Unimpaired and conclusively deemed to have accepted the Amended Plan and are not entitled to vote. Class 2 is impaired and entitled to vote. Class 3 is impaired and entitled to vote.

Holders of Claims and Interests should read and consider carefully the risk factors below that may affect the Plan Proponents' ability to consummate the Amended Plan, as well as the other information set forth in the Amended Plan, any documents delivered together with the Amended Plan, and any documents referred to or incorporated by reference in the Amended Plan, before voting to accept or reject the Amended Plan. These factors should not be regarded as constituting the only risks present in connection with the Amended Plan and its implementation.

**A.    Plan Proponents May Not Be Able to Secure Confirmation of the Amended Plan**. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as set forth in this Amended Plan, the Plan Proponents believe the Amended Plan complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

**B.    Delays or Non-Occurrence of Confirmation or of the Effective Date**. Although the Plan Proponents believe the Effective Date will occur and should occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur. Any delay in confirmation and effectiveness of Amended Plan could result in, among other things, increased Administrative Claims and Professional Fee Claims.

**C.    Parties May Object to the Classification of Claims and Interests**. Section 1122 of the Bankruptcy Code provides that a plan may place a Claim or an Interest in a particular class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class. The Plan Proponents believe the classification of Claims and Interests under the Amended Plan complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

**D.    Risk Factors that May Affect Distributions Under the Amended Plan**. The estimates of Allowed Claims and recoveries for Holders of Allowed Claims set forth in this Amended Plan are based on various assumptions. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary significantly from the estimated Claims contained in the Amended Plan. Moreover, the Plan Proponents cannot determine with any certainty at this time the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the recoveries to holders of Allowed Claims under the Amended Plan.

**E.        Carrier has appealed the Order granting Summary Judgment**. If he is successful on appeal, the Brownfield Tax Credit may not be deposited in the Liquidating Trust.

**F.        The Amended Plan May be Rejected and not Confirmed**. This Amended Plan provides for a distribution to Unsecured Creditors significantly in excess of the Liquidation Value of the Debtor's assets from funds that are being provided to the creditors in exchange for the conveyance to the Plan Proponent or its designee of the Debtor's assets other than the proceeds of the Brownfield Tax Credit and the Brownfield Tangible Property Credit Share. As is evident from the Liquidation Analysis, the amount of the Funding Commitment is significantly in excess of the value of the Debtor's conveyed assets. Nevertheless, creditors may vote to reject the Amended Plan.

In the event that this Amended Plan is rejected and not confirmed, the Plan Proponents believe that it is likely that either they or the U.S. Trustee will file a motion to convert this Case to case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 scenario, the Funding Commitment will not be provided, and subject to recovery of the Brownfield Tax Credit, the Estate will have no funds to compensate the Chapter 7 trustee, or any of its professionals including the Examiner to pursue the recovery of the Brownfield Tax Credit. In addition, the Plan Proponents will not agree to voluntarily defer any of their rights to payment on account of their Allowed Claims.

Consequently, even if the Examiner agrees to continue her work without the assurance of payment, and the Brownfield Tax Credit is received by the Chapter 7 trustee, after payment of Chapter 7 fees and expenses, and Chapter 11 fees and expenses, all Allowed Unsecured Claims will share the remainder Pro Rata, which will result in a *di minimis* distribution.

A detailed Liquidation Analysis prepared by the Plan Proponents with the assistance of FTI Consulting is set forth in Exhibit 1 to this Amended Plan. The liquidation analysis provides a listing and analysis of all of the Debtor's assets and liabilities.

## VIII.

## <u>REQUIREMENTS FOR CONFIRMATION</u>

The various dates, deadlines, and certain procedures relating to voting and Confirmation are provided at pages 3–5 above. The following are the requirements for Confirmation of the Amended Plan. You are encouraged to review the relevant provisions of the Bankruptcy Code and to consult your own advisors with respect to the summary provided in this Amended Plan.

**A.** **Requirements for Confirmation**. The Bankruptcy Court will confirm the Amended Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in this Chapter 11 Case is that the Amended Plan be: (i) accepted by all impaired Classes of Claims and Interests or, if rejected by an impaired Class, the Amended Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; and (ii) feasible. The Bankruptcy Court must also find that:

1. The Amended Plan has classified Claims and interests in a permissible manner;

2. The Amended Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

3. The Amended Plan has been proposed in good faith.

The Plan Proponents believe the Amended Plan complies, or will comply, with all such requirements.

**B.** **Classification of Claims and Interests**. Section 1122 of the Bankruptcy Code requires the Amended Plan to place a claim or equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Amended Plan creates separate Classes to deal respectively with Secured, Priority Tax, and, General Unsecured Claims, and Interests. The Plan Proponents believe the Amended Plan's classifications place substantially similar Claims or Interests in the same Class and thus meet the requirements of section 1122 of the Bankruptcy Code.

**C.** **Impaired Claims or Interests**. Pursuant to section 1126 of the Bankruptcy Code, only the holders of claims in classes impaired by the Amended Plan and receiving a payment or distribution under the Amended Plan may vote on the Amended Plan. Pursuant to section 1124 of the Bankruptcy Code, a class of claims may be impaired if the Amended Plan alters the legal, equitable, or contractual rights of the holders of such claims or equity interests treated in such class. The Holders of Claims in Class 1 are not Impaired by the Amended Plan are deemed to accept the Amended Plan and do not have the right to vote on the Amended Plan. All other Classes are Impaired and have the right to vote.

**D.** **Eligibility to Vote on the Amended Plan**. Holders of Claims in Class 2 and Interests in Class 3 may vote on the Amended Plan unless an objection to the Claim or Interest has been filed at the time the Claim or Interest Holder executes the Ballot.

**E.** **The Amended Plan Satisfies the Best Interests of Creditors Test Liquidation Analysis**. Often called the "best interests" test, section 1129(a)(7) of

the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an interest in such class either (a) has accepted the plan, or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtor liquidated under chapter 7 of the Bankruptcy Code. The Liquidation Analysis makes clear that the Amended Plan satisfies this test.

**F.    The Amended Plan is Feasible**. In order to make the distributions proposed under the Amended Plan, the Plan Proponent or its designee has provided Funding Commitment that will provide the Liquidating Trustee with sufficient funds to pay (i) all Allowed Priority, Secured, and Administrative Claims in full as required by the Bankruptcy Code on or shortly after the Effective Date, (ii) make the Initial Distribution shortly after the Effective Date, and (iii) caused under this Amended Plan the transfer of the Liquidating Trust Assets to the Liquidating Trust to enable the Liquidating Trustee to make all other distributions in accordance with the Waterfall.

Any interested party desiring further information about the Amended Plan should contact Counsel for the Plan Proponents.

**IX.**

**<u>EFFECT OF CONFIRMATION</u>**

**A.    Transfer and Vesting of Assets**. On the Effective Date, (i) all remaining Assets of the Estate of any kind and nature whatsoever, other than the Liquidating Trust Assets, shall be transferred or conveyed to, and become property of, the Plan Proponent or its designee, free and clear of all liens, Claims, Interests, and encumbrances of the Debtor, any creditor, any Holder of any Claim or Interest, or any other Person and (ii) the Liquidating Trust Assets shall vest in and be conveyed and transferred to the Liquidating Trust free and clear of all liens, Claims, Interests, and encumbrances of the Debtor, any creditor, any Holder of a Claim or Interest, or any other Person. The Liquidating Trust Assets shall be managed by the Liquidating Trustee in accordance with this Amended Plan and the Liquidating Trust Agreement, and used for the sole purposes of consummating and carrying out the Amended Plan and effectuating distributions to holders of Allowed Claims and Interests as provided hereunder.

**B.    Authority to Effectuate Amended Plan**. Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), and except as may otherwise be provided herein, any treatment or actions provided for or contemplated under the Amended Plan shall be deemed to be authorized and approved without any further order or approval of the Bankruptcy

Court. The Plan Proponents, the Debtor, and the Liquidating Trustee shall be authorized, without further application to or order of the Bankruptcy Court but subject to the terms of the Amended Plan and the Liquidating Trust Agreement, to take whatever action is necessary or proper to consummate and carry out the Amended Plan, to consummate any transaction provided for herein, and to effectuate the Distributions provided for hereunder. Subject to the terms of the Amended Plan and the Liquidating Trust Agreement, the Liquidating Trust is also expressly authorized and empowered to liquidate, sell, dispose of, or abandon any and all Liquidating Trust Assets, to distribute the proceeds thereof in accordance with the Plan, and to pay all costs and expenses associated with such sale, liquidation, or disposition without further order of the Bankruptcy Court.

If the Debtor fails in any manner to take actions contemplated, necessary, or appropriate under the terms of this Amended Plan, upon the entry of the Confirmation Order, the Plan Proponents are appointed as attorney-in-fact for the Debtor for the purpose of carrying out the provisions of this Amended Plan and taking any action and executing any instruments contemplated by this Amended Plan or necessary to implement any provisions of this Amended Plan. This appointment as attorney-in-fact is irrevocable and coupled with an interest.

**C.     Late Claims**: Any Claim filed after any applicable bar date stated in this Amended Plan, shall be unenforceable unless the Claimant has been granted an extension of time to file a Claim by the Bankruptcy Court and such entity shall not be treated as a creditor or Claimant for the purposes of voting or distributions with respect to the Amended Plan. Unless otherwise expressly ordered by the Bankruptcy Court, any such late-filed Claim shall not be entered on the official claims register, shall be deemed Disallowed and expunged and the Claimant shall receive no distribution under the Amended Plan or from the Liquidating Trust.

## X.

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.     Assumption and Rejection of Executory Contracts and Unexpired Leases**. In its Schedule G, the Debtor lists 2 executory contracts: CRE Consulting Agreement dated Nov. 15, 2013, and Limited Liability Company Agreement dated Nov. 15, 2013. Except as otherwise provided herein or in any Plan Supplement filed by the Plan Proponents, each Executory Contract and Unexpired Lease is deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor pursuant to an order of the Bankruptcy Court; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to assume or reject pending on the Confirmation Date. Entry of the Confirmation Order shall constitute a Final Order

approving the rejection of all Executory Contracts or Unexpired Leases as set forth in the Amended Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.**     **Bar Date for Rejection Damages**. If the rejection of an executory contract or an unexpired lease pursuant to this Article results in damages to the other party or parties to such executory contract or unexpired lease, a Rejection Claim arising from such rejection shall not be enforceable against the Debtor or its Estate or the Liquidation Trust, their agents, successors, or assigns, and the Debtor, the Estate, the Liquidation Trust, and their properties shall be forever discharged from any and all liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein, unless a proof of Claim is filed so as to actually be received on or before the Rejection Claim Bar Date.

**C.**     **Insurance Policies**. Notwithstanding anything in the Amended Plan to the contrary, as of the Effective Date, the Debtor shall assume and assign to the Plan Proponent or its designee, and the Liquidating Trustee (to allow the Insurance Policies to continue in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the Insurance Policies.

**D.**     **Modifications, Amendments, Supplements, Restatements, or Other Agreements**. Unless otherwise provided in the Amended Plan, each Executory Contract or Unexpired Lease that is assumed or rejected shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant in the Amended Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**E.**     **Contracts and Leases Entered Into After the Petition Date**. To the best of the knowledge of the Plan Proponents, the Debtor has not entered into any contracts or leases after the Petition Date, nor has the Debtor assumed any contracts or leases during the course of this Case.

**F.**     **General Reservation of Rights.** To the extent that there are any extant contracts or leases, nothing contained in the Amended Plan shall constitute

an admission by the Plan Proponents that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor, the Plan Proponents, the Liquidation Trust or any of their affiliates, have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Plan Proponents shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**XI.**

## **IMPLEMENTATION OF THIS PLAN**

**A.    Creation of Liquidating Trust.**

**1.**   On the Effective Date, the Liquidating Trust shall be created as the vehicle for implementation of the Amended Plan. A Liquidating Trust Agreement shall be executed by the Debtor, the Plan Proponents, and the Liquidating Trustee. All right, title, and interest of the Estate in the Liquidating Trust Assets shall be transferred, assigned, and delivered to the Liquidating Trust, free of all Claims, Liens, and Interests, to be managed as Liquidating Trust Assets by the Liquidating Trustee in accordance with the terms of the Amended Plan and the Liquidating Trust Agreement for the sole purposes of consummating and carrying out the Amended Plan. All other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein.

**2.**   The Liquidating Trustee shall manage the Debtor's orderly wind down and effect the closing of this Chapter 11 Case, make and file all tax returns for the Liquidating Trust, if necessary, and take such actions as are otherwise provided under the Liquidating Trust Agreement, including overseeing claims objections (which may be prosecuted by the Plan Proponents), and, to the extent possible, shall reduce to Cash or otherwise liquidate the unliquidated Liquidating Trust Assets, and after deducting costs and expenses of liquidating, disposing of, or maintaining such assets, other costs, and expenses of the Liquidating Trust, and setting aside such reserves as determined by the Liquidating Trustee, the Liquidating Trustee shall distribute the Liquidating Trust Assets in accordance with the terms of the Amended Plan and Liquidating Trust Agreement.

**3.**   The Liquidating Trustee shall have the powers, duties, and obligations set forth in the Amended Plan and the Liquidating Trust Agreement. The costs and expenses incurred by the Liquidating Trustee on and after the Effective Date shall be paid from the Liquidating Trust Assets. Upon entry of the Final Decree closing this Chapter 11 Case or as otherwise provided in the Liquidating Trust Agreement, the Liquidating Trust shall be terminated and dissolved without further action by the Liquidating Trustee. In connection with the above-described assets, any and all

rights, claims, and causes of action, any attorney-client or similar privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest with the Liquidating Trustee and its representatives.

4. The Liquidating Trust shall be funded with the Liquidating Trust Assets. To the extent that the Liquidating Trust Assets are illiquid, the Plan Propone tor its designee shall fund the Liquidating Trust in such amounts as the Plan Proponent and the Liquidating Trustee determine is necessary. In the event the Plan Proponet or its designee funds any amounts in the Liquidating Trust for this purpose, then upon the monetization of any of the assets of the Liquidating Trust, the Liquidating Trustee shall immediately repay the Plan Proponent 125% of the amount funded. This payment shall prime and be paid before any distributions are made under the Waterfall.

5. The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement and shall not be required to file a fee application or obtain any approval of the Bankruptcy Court to receive compensation; provided, however, that all fees and expenses of the Liquidating Trustee (including the payment of compensation to professionals retained by the Liquidating Trustee or Liquidating Trust) shall be submitted to the Plan Proponents for approval prior to payment. Subject to the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to hire and engage such professionals as it deems appropriate to assist in carrying out the duties of the Liquidating Trust, with the reasonable fees and expenses of such professionals to be paid from the Trust Assets. The Liquidating Trustee may pay from the Trust Assets all reasonable fees and expenses incurred in connection with the duties and actions of the Liquidating Trustee, including, but not limited to, fees and expenses of the Liquidating Trustee's professionals, insurance, taxes, and other expenses arising in the ordinary course of business in maintaining, liquidating, disposing of, and the distribution of the Trust Assets and compensation to the Liquidating Trustee. Any disputes concerning the administration of the Liquidating Trust or implementation of the distribution of the Liquidating Trust Assets may be brought before the Bankruptcy Court for resolution.

6. The Liquidating Trust will terminate no later than 5 years after the Effective Date *provided, however*, that upon motion of the Liquidating Trustee or a party in interest, the Bankruptcy Court may extend the term of the Liquidating Trust for a fixed period if it is necessary or appropriate to facilitate or complete the liquidation and distribution of the Liquidating Trust Assets. Additional extensions can be obtained so long as Bankruptcy Court approval is obtained; *provided, however*, that the aggregate of all such extensions shall not exceed 5 years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes.

**7.** The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets, in accordance with Treasury Regulation Section 301.7701–4(d), with no objective to continue or engage in the conduct of a trade or business.

**8.** For federal income tax purposes, all parties, including, without limitation, the Debtor, the Liquidating Trustee, and the beneficiaries of the Liquidating Trust, shall treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Amended Plan and the Liquidating Trust Agreement, as a transfer to the holders of Allowed Claims and Interest in full satisfaction of such Claims and Interests, followed by a transfer by such Claimants and Interest Holders to the Liquidating Trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors and owners thereof.

**9.** The beneficial interests in the Liquidating Trust shall not be certificated and shall not be transferable.

### B. The Liquidating Trustee.

**1.** The Plan Proponents shall select the Liquidating Trustee. Without the permission of the Bankruptcy Court, no judicial, administrative, arbitration, or other action or proceeding shall be commenced against the Liquidating Trustee in its official or personal capacity, with respect to its status, duties, powers, acts, or omissions as the Liquidating Trustee in any forum other than the Bankruptcy Court.

**2.** The Liquidating Trustee shall report to the Plan Proponents, which shall direct the Liquidating Trustee's actions, all pursuant to the Liquidating Trust Agreement and the Amended Plan.

**3.** The Liquidating Trustee shall act on behalf of the Liquidating Trust to carry out its obligations and to exercise its rights in accordance with and subject to the Amended Plan, the Confirmation Order, and the Liquidating Trust Agreement. The Liquidating Trustee shall be vested with the rights, powers, and benefits as set forth in the Liquidating Trust Agreement, including without limitation, all rights, powers, and benefits afforded a "trustee" under Bankruptcy Code §§ 704 and 1106.

**4.** The Liquidating Trustee may, but shall not be required to, set-off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim and/or Right of Action the Estate may have against the Claimant; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such Right of Action, set-off or recoupment which the Estate or the Plan Proponents may have against such Claimant.

**C.     Cancellation of Instruments and Interests**. On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims and all Interests in the Debtor shall be cancelled and deemed terminated, without any further act or action under any applicable agreement, law, regulations, order, or rule.

**D.     Disposition of Books and Records**. After the Effective Date, the Debtor shall transfer the Debtor's books and records remaining in the Debtor's possession to the Plan Proponent who shall make them available to the Liquidating Trustee. From and after the Effective Date, the Plan Proponent may continue to preserve and maintain all documents and electronic data transferred to it by the Debtor, and may destroy or otherwise abandon any such documents and records (in electronic or paper format) upon consultation with the Liquidating Trustee without further order of the Bankruptcy Court. The Plan Proponent and Liquidating Trustee may destroy or abandon all remaining books and records upon entry of a Final Decree closing the Chapter 11 Case.

**E.     Corporate Existence and Dissolution of Debtor**. Immediately after the Effective Date, the Liquidating Trustee shall be authorized, but not required, to take all actions reasonably necessary to dissolve the Debtor under applicable laws, including under the laws of the jurisdictions in which it may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolution, including the costs of preparing or filing any necessary paperwork or documentation.

**F.     Closing the Chapter 11 Case**. After all Disputed Claims have been resolved, the Statutory Fees have been paid, all of the Estate's and Liquidating Trust Assets have been distributed in accordance with this Plan, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

## XII.

## DISTRIBUTIONS

**A.     The Liquidating Trustee to Make Distributions**. Unless ordered otherwise in the Confirmation Order, the Liquidating Trustee shall make all payments required by this Amended Plan.

**B.     Method of Payment; Payments, Filings, and Notices Only on Business Days**. Payments of Cash under the Amended Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any

payment, distribution, filing, delivery, or notice to be made under the Amended Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

**C.** **Undeliverable or Unclaimed Distributions**. Payments required by this Amended Plan, if made by check, shall be mailed to the address set forth in any proof of claim, to the address set forth in any written notice of address change filed with the Bankruptcy Court or provided to the Liquidating Trustee, or to the address set forth in the Debtor's schedules if no proof of claim has been filed and no written notice of address change has been filed or properly provided. If any distribution to a Holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable, no further distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address or other necessary information for delivery within 60 days of the date of the initial attempted distribution. If such Holder provides the requisite notification, the Liquidating Trustee will, within 30 days of receipt of such information, deliver such undeliverable distribution to the Holder. If such undeliverable distribution is again returned as undeliverable, or if such Holder fails to provide information within the 60 day period, such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Liquidation Trust. Notwithstanding anything to the contrary contained in the Amended Plan, nothing in this provision shall act as a bar to entry of a Final Decree or closure of the Chapter 11 Case.

**D.** **Time Bar to Cash Payments**. Checks issued by the Liquidating Trustee in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Liquidation Trust free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, the Liquidating Trustee, or the Plan Proponents.

**E.** **Setoff and Recoupment**. From and after the Effective Date, the Liquidating Trustee may, to the extent permitted by section 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against or recoup from any Claim, other than the Allowed Claims of the Plan Proponents or their affiliates, on which distributions are to be made, any Rights of Action of any nature whatsoever that the Plan Proponent may have against the Holder of such Claim; *provided*, *however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor of any other Cause of Action.

**F.      No Interest**. No interest shall accrue or be paid on any Claim, except as provided in the Waterfall.

**G.      Disputed Claims**. No payment will be made on account of a Disputed Claim unless such claim has been Allowed by final non-appealable order or resolved as provided below. Unless another time is set by order of the Bankruptcy Court, the Plan Proponents or the Liquidating Trustee shall have until the Claim Objection Deadline to file objections to any Disputed Claim. The Claim Objection Deadline may be extended on motion of the Plan Proponents or the Liquidating Trustee for cause, or on consent. For the avoidance of doubt, the Plan Proponents or the Liquidating Trustee shall have the authority to settle and resolve any Disputed Claim on such terms as they deem appropriate without the need for Bankruptcy Court approval.

**H.      Withholding Taxes**. The Liquidating Trustee shall be entitled to deduct any federal, state, or local withholding taxes from any payments made under this Amended Plan. As a condition to making any such payment, the Liquidating Trustee may require that the recipient of a Distribution provide its taxpayer identification number and such other information and certification as may be deemed necessary for it to comply with applicable tax reporting and withholding laws. If any recipient of a Distribution fails to provide such number, information, or certification within 60 days from the date notification of the need for such information is sent to the Person, such Person's Distribution will be treated as unclaimed property in accordance with Article XII, Section C herein, or the amount required to be withheld may be so withheld and turned over to the applicable authority, at the Liquidating Trustee's discretion.

**I.      Fractional Dollars, De Minimis Distributions**. Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Amended Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Liquidating Trustee shall not be required to make payments of less than fifty dollars ($50.00) on account of any Allowed Claim, unless a specific request is made in writing to the Liquidating Trustee. Absent written request, the Liquidating Trustee may retain any such sums and, until the total distribution due to such creditors exceeds $50.00 or until the final distribution is made under the Amended Plan, at which point the Liquidating Trustee shall distribute all sums due such Claimants. In addition, after the Initial Distribution Date, the Liquidating Trustee shall not be required to make any distribution on account of any Claim in the event that the costs of making such distribution payment exceed the amount of such distribution payment, and all Cash that otherwise would have been distributed to Claimants holding such de minimis claims shall otherwise be distributed in accordance with the terms of the Amended Plan and Liquidating Trust Agreement.

## ALLOWANCE OF CLAIMS AND INTERESTS AND
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

    **A.    Prosecution of Objections to Claims Or Interests.** Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Claimant whose Claim is objected no later than 60 days after the Effective Date. Objections to Professional Fees shall be filed in the manner required by the Bankruptcy Court. Objections to Interests shall be filed with the Bankruptcy Court and served upon the Interest Holder who Interest is objected no later than 90 days after the Effective Date.

    **B.    Disallowance of Claims**. Pursuant to Bankruptcy Code §§ 105 and 502(d), no distributions will be made with respect to Claims that are Disputed or to Claimants from which property is recoverable under Bankruptcy Code §§ 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) (including the Avoidance Actions) until such time as such objection or Rights of Action against that Claimant have been settled or resolved by a Final Order and all sums due are turned over to the Plan Proponent. As soon as practicable after the date on which a Claim that is Disputed becomes Allowed, the holder of such newly Allowed Claim will receive all distributions to which it is entitled under the Amended Plan.

    **C.    No Distribution Pending Allowance**. Notwithstanding any other provision of the Amended Plan, no payment or distribution shall be made with respect to any Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. Any person who holds both an Allowed Claim and a Claim that is Disputed will receive the appropriate distribution on the Allowed Claim, but will not receive a distribution on the Claim that is Disputed.

    **D.    Allowance of Claims**. Except as expressly provided for in the Amended Plan, no Claim shall be deemed Allowed by virtue of the Amended Plan, Confirmation Order, or any order of the Bankruptcy Court in this Chapter 11 Case, unless and until such Claim is Allowed.

    **E.    Late Claims**. Any Claim filed after any applicable bar date shall be unenforceable unless the Claimant has been granted an extension of time to file a Claim by the Bankruptcy Court, and such entity shall not be treated as a creditor or Claimant for the purposes of voting or distributions with respect to the Amended Plan. Unless otherwise expressly ordered by the Bankruptcy Court, any such late-filed Claim shall not be entered on the official claims register, shall be deemed Disallowed and expunged and the Claimant shall receive no distribution under the Amended Plan.

**F.     Estimation of Claims**. The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Unsecured Claim pursuant to Bankruptcy Code § 502(c). The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.

**G.     Cumulative Remedies**. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved as provided herein or by any mechanism approved by the Bankruptcy Court. Until such time as a Claim becomes Allowed, such Claim shall be treated as Disputed for purposes related to allocations and distributions.

## XIV.

## EFFECT OF THE AMENDED PLAN ON CLAIMS, INTERESTS, AND RIGHTS OF ACTION

**A.     Binding Effect**. On and after the Confirmation Date, the provisions of the Amended Plan shall bind any Holder of a Claim or Interest against the Debtor who held such Claim or Interest at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Amended Plan and whether or not such holder has been deemed to accept the Amended Plan.

**B.     Vesting of Assets**. Except as otherwise explicitly provided in this Amended Plan, on the Effective Date, (i) all property comprising the Estate shall vest in the Plan Proponent or its designee, except Liquidating Trust Assets, free and clear of all Claims, liens, charges, interests, and encumbrances, and (ii) the Liquidating Trust Assets shall vest in the Liquidating Trust, free and clear of all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Plan Proponent or Liquidating Trustee may use or dispose of the assets which have vested in them and settle and compromise Claims, Interests, or Rights of Action as relate to their respective vested assets without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Amended Plan or the Confirmation Order.

**C.     Authority to Effectuate Amended Plan**. Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), and except as may otherwise be provided herein, any treatment or actions provided for or contemplated under the Amended Plan shall be deemed to be

authorized and approved without any further order or approval of the Bankruptcy Court. The Plan Proponents shall be authorized, without further application to or order of the Bankruptcy Court but subject to the terms of the Amended Plan to take whatever action is necessary or proper to consummate and carry out the Amended Plan, to consummate any transaction provided for herein, and to effectuate the Distributions provided for hereunder.

# XV.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

**A.      Conditions to Effectiveness**. The Effective Date does not occur unless and until:

1.      The Confirmation Date occurs and the Confirmation Order has become a Final Order;

2.      All instruments and agreements to be issued, entered into, delivered, or filed under the Amended Plan are issued, entered into, delivered, or filed and are effective;

3.      The Liquidating Trust shall have been created pursuant to the terms of the Amended Plan;

4.      The Liquidating Trustee shall have been appointed; and

5.      The Liquidating Trust Agreement shall have been executed by the Liquidating Trustee.

**B.      Waiver of Conditions**. The Plan Proponents may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action.

**C.      Effect of Non-Occurrence of the Effective Date**. If the Effective Date does not occur, the Amended Plan shall be null and void and nothing contained in the Amended Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; or (b) constitute an admission, acknowledgement, offer, or undertaking by the Plan Proponents. In the event that one or more of the conditions specified in herein shall not have occurred or otherwise not have been waived, (a) the Confirmation Order shall be vacated, (b) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Order were never entered, and (c) the Debtor's obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtor or any other Person or prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

# XVI.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The confirmation and execution of the Amended Plan may have tax consequences to holders of Claims and Interests. The Plan Proponents do not offer an opinion as to any federal, state, local, or other tax consequences to holders of Claims and Interests as a result of the confirmation of the Amended Plan. All holders of Claims and Interests are urged to consult their own tax advisors with respect to the federal, state, local, and foreign tax consequences of the Amended Plan. The Amended Plan is not intended, and should not be construed, as legal or tax advice to any Claimant, Interest Holder, or other party in interest.

## XVII.

## EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

**A.    Exculpation**. The Exculpated Parties shall not have any liability to any holder of a Claim or Interest for any claims arising before, on, or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Amended Plan, the consummation of the Amended Plan, or the administration of the Amended Plan or the property to be distributed under the Amended Plan, except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Amended Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, and any other applicable law, Bankruptcy Court order, or rules protecting such Persons from liability.

**B.    Releases by the Debtor**. Except as otherwise provided herein, as of the Effective Date, for good and valuable consideration, each of the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity, or otherwise that the Debtor or its Estate would have been legally entitled to assert in their own right or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Amended Plan, the negotiation, formulation, or preparation of the Amended Plan, or related agreements, instruments, or other documents in connection with the transactions contemplated under the Amended Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that nothing in the Amended Plan, including this paragraph, shall release (i) any obligations under the Amended Plan; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud, or criminal conduct as determined by a Final Order ("**Debtor Release**").

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtor and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; and (d) given and made after due notice and opportunity for hearing.

## C. RELEASES BY HOLDERS OF CLAIMS OR INTERESTS. THIRD PARTY RELEASE.

AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED IN THE AMENDED PLAN, THE RELEASING PARTIES ARE DEEMED TO HAVE RELEASED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, RIGHTS OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR OR THE ESTATE, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, MATURED OR UNMATURED, DETERMINED OR DETERMINABLE, DISPUTED OR UNDISPUTED, LIQUIDATED OR UNLIQUIDATED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE AMENDED PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE AMENDED PLAN, THE CONFIRMATION ORDER, AND RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON AND BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE THIRD PARTY RELEASE SHALL NOT RELEASE ANY OBLIGATIONS OF ANY PARTY UNDER THE AMENDED PLAN OR ANY

**OTHER DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE AMENDED PLAN.**

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS; IS (C) FAIR, EQUITABLE AND REASONABLE; AND (D) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

> **THE BALLOT PROVIDED TO ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THIS AMENDED PLAN CONTAINS A BOX THAT IF CHECKED WILL MEAN THAT THE HOLDER OF THE CLAIM OR INTEREST HAS OPTED OUT OF GIVING THIS THIRD PARTY RELEASE. OPTING OUT WILL NOT AFFECT THE HOLDER'S DISTRIBUTION UNDER THE AMENDED PLAN.**

D. INJUNCTION. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL PERSONS THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTOR OR ITS ESTATE THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE PERMANENTLY ENJOINED, SOLELY WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE LIQUIDATING TRUSTEE OR THE RELEASED PARTIES; (B) COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY PROPERTY OF THE DEBTOR OR ITS ESTATE THAT IS TRANSFERRED TO THE LIQUIDATING TRUST, THE PLAN PROPONENTS, VERNON LP, OR ANY OTHER PERSON, PURSUANT TO THE PLAN, THE LIQUIDATING TRUST, OR BY THE LIQUIDATING TRUSTEE; (C) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY PROPERTY OF THE DEBTOR OR ITS ESTATE THAT IS TRANSFERRED TO THE LIQUIDATING TRUST, THE PLAN PROPONENTS, VERNON LP, OR ANY OTHER PERSON, PURSUANT TO

THE PLAN, THE LIQUIDATING TRUST, OR BY THE LIQUIDATING TRUSTEE; (D) CREATING, PERFECTING, OR ENFORCING, IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN OR ENCUMBRANCE AGAINST ANY PROPERTY OF THE DEBTOR OR ITS ESTATE THAT IS TRANSFERRED TO THE LIQUIDATING TRUST, THE PLAN PROPONENTS, VERNON LP, OR ANY OTHER PERSON, PURSUANT TO THE PLAN, THE LIQUIDATING TRUST, OR BY THE LIQUIDATING TRUSTEE; (E) EXCEPT TO THE EXTENT PERMITTED BY SECTIONS 362(B), 553, 559, 560, OR 561 OF THE BANKRUPTCY CODE, ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION AGAINST THE DEBTOR, ITS ESTATE, THE LIQUIDATING TRUST, OR THE LIQUIDATING TRUSTEE; (F) PURSUING ANY CLAIM OR RIGHT OF ACTION RELEASED PURSUANT TO THE AMENDED PLAN; OR (G) TAKING ANY ACTIONS WHICH INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE AMENDED PLAN. THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS THEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER. THE DEBTOR SHALL NOT RECEIVE A DISCHARGE AS SET FORTH IN SECTION 1141(D)(3)(A) OF THE BANKRUPTCY CODE. FOLLOWING THE EFFECTIVE DATE, THESE INJUNCTIONS SHALL REMAIN PERMANENTLY IN FULL FORCE AND EFFECT.

## XVIII.

## <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court shall retain and have subject matter jurisdiction over any matter arising under the Bankruptcy Code, or arising in, out of, or related to this Chapter 11 Case and the Amended Plan, including jurisdiction to:

1. Resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

2. Adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Amended Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the

allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

3.  Ensure that distributions to Holders of Allowed Claims or Interests are accomplished as provided under this Amended Plan and adjudicate any and all disputes arising from or relating to Distributions under the Amended Plan;

4.  Hear and determine or resolve any and all matters related to Rights of Action;

5.  Enter and implement any orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

6.  Issue and implement orders in aid of execution, implementation, or consummation of this Amended Plan and all contracts, instruments, releases, transactions, and other agreements or documents created in connection with the Amended Plan to the extent authorized by Bankruptcy Code § 1142, including, but not limited to, orders interpreting, enforcing, or clarifying the provisions thereof;

7.  Consider any modifications of this Amended Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

8.  Hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Amended Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

9.  Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Amended Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Amended Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Amended Plan;

10. Hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of its Estate vested in the Plan Proponent or the Liquidating Trust under the Amended Plan, wherever located;

11. Hear and determine all issues and matters relating to the Examiner;

12. Hear and determine any timely objections to Claims, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of, or secured or unsecured status of any Claim, in whole or in part;

13. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14. Grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, or in the event that the Effective Date does not occur, to consider any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4);

15. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or enforcement of the Amended Plan;

16. Enforce the Liquidating Trustee's interest in the Liquidating Trust Assets, and all rights of the Liquidating Trustee;

17. Resolve any matters that may arise in connection with the Liquidating Trust or the Liquidating Trust Agreement;

18. Determine and hear any actions or controversies by or against the Liquidating Trustee;

19. Enforce all orders, judgments, and rulings entered in connection with the Chapter 11 Case, including the order appointing the Examiner, and to determine any other matters that may arise in connection with or are related to the Amended Plan and the Confirmation Order;

20. Enforce the permanent injunction created by the Confirmation Order and Article XVII hereof;

21. Hear any other matter not inconsistent with the Bankruptcy Code;

22. Issue a Final Decree and enter an order closing the Chapter 11 Case; and

23. Nothing contained in this Article shall be construed to increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

# XIX.

## MISCELLANEOUS

**A.    Effecting Documents; Further Transactions; Timing**. The Debtor, the Plan Proponents, and the Liquidating Trustee are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Amended Plan. All transactions required to occur on the Effective Date under the terms of the Amended Plan are deemed to have occurred simultaneously.

**B.    Governing Law**. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Amended Plan, without giving effect to principles of conflicts of law of New York.

**C.    Continuing Viability of Other Orders/Agreements**. Except to the extent expressly modified by the Amended Plan, all Final Orders previously entered by the Bankruptcy Court shall continue in full force and effect.

**D.    Exemption from Transfer Taxes**. Under Bankruptcy Code § 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Amended Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**E.    Preservation and Application of Insurance**. The provisions of this Amended Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

**F.    Post-Effective Date Fees; Final Decree**. Notwithstanding anything to the contrary contained in the Amended Plan, all fees payable through the Effective

Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter. The Liquidating Trust is responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) until the Bankruptcy Court enters a Final Decree, which the Liquidating Trustee must seek as soon as feasible after distributions under the Amended Plan have commenced. Notice of application for a Final Decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

**G.  Modification and Amendments**. The Plan Proponents may alter, amend, or modify this Amended Plan under section 1125 of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Amended Plan as defined in section 1101(2) of the Bankruptcy Code, the Plan Proponents may, under section 1127 of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Amended Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Amended Plan.

**H.  Expedited Tax Determination**. The Liquidating Trustee is authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending after the applicable Petition Date through and including the Effective Date.

**I.  Post-Confirmation Reporting**. Following confirmation of the Plan, the Liquidating Trustee shall file reports of its activities and financial affairs with the Bankruptcy Court, on such basis as is required by the Court, the Local Bankrutcy Rules, or the guidelines issued by the U.S. Trustee.

**J.  Revocation, Withdrawal, or Non-Consummation**. The Plan Proponents reserve the right to revoke or withdraw this Amended Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Plan Proponents' filing of a notice thereof, and to file subsequent chapter 11 plans. If the Plan Proponents revoke or withdraw the Amended Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Rights of Action or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of any Person in any further proceedings involving the Debtor.

**K.  Exhibits/Schedules**. All exhibits and schedules to the Amended Plan are incorporated into and are a part of the Amended Plan as if set forth in full herein. In the event of any inconsistency between the Amended Plan and the exhibits and schedules to the Amended Plan or any supplement to the Amended Plan, the terms of the Amended Plan shall control.

**L. Substantial Consummation**. On the Effective Date, the Amended Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**M. Notices**. After the Effective Date, any pleading, notice, or other document required by the Amended Plan to be served on or delivered on the parties below shall be served as follows:

### *If to the Plan Proponents:*

CSC 4540, LLC
Attn. Jared White
261 Fifth Avenue, Suite 1802
New York, NY 10016
jwhite@quadrumglobal.com

With a copy (which shall not constitute notice) to:

Joseph T. Moldovan, Esq.
Edward P. Gilbert, Esq.
David J. Kozlowski, Esq.
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
T: 212-735-8600
F: 212-735-8708
jmoldovan@morrisoncohen.com
egilbert@morrisoncohen.com
dkozlowski@morrisoncohen.com

### *If to the Debtor:*

Bruce Bronson, Esq.
Bronson Law Offices, P.C.
480 Mamaroneck Ave.
Harrison, NY 10528
Phone: (914) 827-5238
Local: (914) 269-2530
hbbronson@bronsonlaw.net

Brent Carrier
45 Carleon Avenue
Larchmont, NY 10538
brentlcarrier@yahoo.com

*If to the Examiner:*

Angela M. Orlandella
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202
aorlandella@barclaydamon.com

With a copy (which shall not constitute notice) to:

Janice B. Grubin
Barclay Damon LLP
1270 Avenue of the Americas, Suite 501
New York, New York 10020
jgrubin@barclaydamon.com

*If to the U.S. Trustee:*

Office of the United States Trustee
Southern District of New York
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
T: 212-510-0500
F: 212-668-2256
Attn: Andrea B. Schwartz, Esq.

*If to the Liquidating Trustee:*

as provided in the Liquidating Trust Agreement

**N.**     **Entire Agreement**. Except as otherwise indicated, the Amended Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Amended Plan.

**O.**     **Severability**. If, prior to the Confirmation Date, any term or provision of the Amended Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Amended Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding,

alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Amended Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Amended Plan and may not be deleted or modified without the Plan Proponents' consent, and (c) non-severable and mutually dependent.

       **P.**    **Conflicts**. Except as set forth in the Amended Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Amended Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Amended Plan, the Amended Plan shall govern and control; provided, however, that if there is a conflict between this Amended Plan and an Amended Plan Supplement document, the Amended Plan Supplement document shall govern and control.

June 23, 2021

Respectfully submitted,

*Plan Proponents CSC 4540, LLC*

*/s/   Jared White*
Jared White, Authorized Signatory

# EXHIBIT 1 - LIQUIDATION ANALYSIS
## COMPLETED BY FTI CONSULTING

| Plan Proponent - Liquidation Analyses COMPLETED BY FTI CONSULTING INC | | | |
|---|---|---|---|
| | Net Value | Est. Liquidation Proceeds | Est. Liquidation Recovery |
| **Assets** | | | |
| Unrestricted Cash[1] | $ 28.04 | $ 28.04 | 100.00% |
| Receivable (Brownfield Tax Credit)[2] | 1,859,702.65 | 1,859,702.65 | 100.00% |
| CSC 4540 LLC Class B Interest[3] | - | - | 0.00% |
| Deferred Purchase Price due from CSC 4540 LLC[4] | - | - | 0.00% |
| Brownfield Tangible Property Tax Credit[4] | - | - | 0.00% |
| Violation of LLC Agreement w/ CSC 4540 LLC (BBL 25/1)[4] | - | - | 0.00% |
| Violation of LLC Agreement w/ CSC 4540 LLC (BBL 26/10)[4] | - | - | 0.00% |
| **Total Assets for Distribution[5]** | **$ 1,859,730.69** | **$ 1,859,730.69** | |
| **Liabilities** | | | |
| **Secured Claims** | | | |
| NYS Dept. of Tax & Finance -Secured Tax Claim[6] | | $ (3,137.66) | |
| **Chapter 7 Administrative Expenses** | | | |
| Chapter 7 Trustee Fees | | $ (79,040.90) | |
| Professional Fees | | (50,000.00) | |
| Examiner Fees[7] | | (50,000.00) | |
| **Net Proceeds After Secured Claims & Chapter 7 Admin. Fees[5,8]** | | **$ 1,677,552.13** | |
| **Chapter 11 Administrative Expenses** | | | |
| Professional Fees | | (50,000.00) | |
| Examiner Fees[9] | | (50,000.00) | |
| **Net Proceeds After Chapter 11 Admin. Fees[5,8]** | | **$ 1,756,593.03** | |
| | | **Estimated Value** | |
| **Chapter 11 Priority Claims** | | | |
| NYS Dept. of Tax & Finance[6] | | (34.10) | |
| **Chapter 11 Unsecured Claims** | | | |
| Plan Proponents[10] | | $ (25,072,819.00) | |
| Brent Carrier[11] | | (1,500,000.00) | |
| SCE Environmental Group, Inc.[12] | | (216,589.56) | |
| Hodgson Russ LLP[13] | | (85,475.50) | |
| U.S. Treasury - Internal Revenue Service[14] | | (23,247.13) | |
| **Total Chapter 11 Priority Claims[5]** | | $ (34.10) | |
| **Remaining Proceeds[5]** | | $ 1,756,558.93 | |
| **Total Chapter 11 Unsecured Claims** | | $ (26,898,131.19) | |
| **Remaining Proceeds** | | $ - | |
| **Estimated Liquidation Recovery** | | 6.53% | |
| **If the Brownfield Tax Credit is not deposited in the Estate, there will be no recovery to any creditor or payment of any Chapter 7 fees and expenses.** | | | |

[1] U.S Bankruptcy Court Official Form 425, Filed 04/01/21 EFC No. 43

[2] See Schedule 1 NYS Brownfield Tax Credit Calculation; CSC 4540, LLC Limited Liability Company Agreement - Paragraph 8.2

[3] See Schedule 2: As-Is / Class A & B Member Interests; CSC 4540 LLC Class B Interest value calculated based on current "as-is" value of 4540 Vernon Blvd., L Capital Call Summary dated 02/04/21 and CSC 4540 LLC Limited Liability Company Agreement

[4] Vernon 4540 Realty LLC, U.S. Bankruptcy Court Official Form 206A/B EFC No.1; Litigation claims that the Plan Proponent believes have no value in a liquidatic

[5] Assuming recovery of Brownfield Tax Credit

[6] New York State Dept of Tax & Finance Pre-Petition Proof Claim; Filed 8/10/20 Claim No.1

[7] Estimated fees prior to Chapter 7 liquidation

[8] Assumes all filed and scheduled Claims identified in Amended Plan are allowed

[9] Analysis assumes Examiner services will be needed as part of Brownfield Tax Credit recovery efforts.

[10] U.S Bankruptcy Court Official Form 410, Filed 02/18/21, Claims Nos. 5,6,7 & 8. Plan Proponents estimates that these claims

[11] U.S Bankruptcy Court Official Form 210 E/F, Filed 08/05/20 EFC#; Plan Proponent believes this claim has no value.

[12] U.S Bankruptcy Court Official Form 410, Filed 08/26/20 EFC#

[13] U.S Bankruptcy Court Official Form 410, Filed 10/14/20 EFC#

[14] U.S Bankruptcy Court Official Form 410, Filed 8/12/20 EFC#

## SCHEDULE 1: BROWNFIELD TAX CREDIT LIQUIDATION ANALYSIS

| Schedule1: CSC 4540 LLC Brownfield Tax Credit Calculation | | | | |
|---|---|---|---|---|
| **Class A & B Members - Present Value (PV)** | | | | |
| | | | Class A | | Class B |
| | **Total** | **45-50 Vernon LP** | **JSMB 4540 LLC** | **Vernon 4540 Realty LLC** |
| **Brownfield Tax Credit Value**[1] | $ 3,907,916.00 | $ 1,813,859.21 | $ 140,098.79 | $ 1,953,958.00 |
| **PV of Tax Credit @3.64% Disc. Rate - 12 Months** [2] | $ 3,768,433.26 | $ 1,749,118.30 | $ 135,098.33 | $ 1,884,216.63 |
| Less PV of $50000 Annual Audit & Legal Expense | (49,027.96) | (22,756.33) | (1,757.65) | (24,513.98) |
| **PV Tax Credit Less PV Cost to Secure Claim** | $ 3,719,405.30 | $ 1,726,361.97 | $ 133,340.68 | $ 1,859,702.65 |

[1]Amended Claim for Brownfield Redevelopment Tax Credit - Form IT-611.1 2016 Amended CSC 4550 01.21.2021.pdf

[2]Discount Rate - Bank of America Merrill Lynch U.S. High Yield BB Rated Effective Yield


## SCHEDULE 2: DEBTOR'S CLASS B INTEREST IN CSC LIQUIDATION ANALYSIS

| Schedule 2: CSC 4540 LLC  Class B Interest Calculation | | | |
|---|---|---|---|
| **As-Is Sale / Class A & B Member Interests** | | | |
| The asset being sold in the liquidation is Debtor's Class B interest in CSC whose subsidiary owns the Property. For the purposes of evaluating Debtor's Class B Interest in CSC under a liquidation, it has assumed a sale of the Property. However, Chapter 7 trustee has no authority to cause a sale of the Property. Moreover, the Class B Interest is subordinate to the Class A Members' First Tier Distribution which is in excess of $90 million so, as described below, it will not realize proceeds from the sale of the Property. | | **Cash Distributions** | |
| | | **Class A** | **Class B**[1] |
| **Gross Sale Proceeds from Sale of Property** [2] | $     22,107,800.00 | | |
| Less: | | | |
| Cost of Sale (4%) | (884,312.00) | | |
| NYS Transfer Tax (0.650%) | (143,700.70) | | |
| NYC Transfer Tax (2.625%) | (580,329.75) | | |
| **Net Proceeds from Sale of Property**[3] | $     20,499,457.55 | | |
| First Tier Distribution: Preferred Return & Return of Capital[4] | (20,499,457.55) | 20,499,457.55 | $            - |
| **Funds Remaining after First Tier Distribution** | - | | |
| Second Tier Distribution: Class B | | | - |
| **Remaining Cash for Distribution** | - | | |
| Class A Share of Remaining Cash | | - | |
| Class B Share of Remaining Cash | | | - |
| **Total Cash Distributions** | | $     20,499,457.55 | $            - |
| **Value of Class B Interest** | | | **$0** |

[1] Class B - Vernon 4540 Realty, LLC

[2]JLL LIC Land Sales Comparable List - September 2020 Update (002).pdf; JLL 45-40 Vernon Blvd. BOV December 10, 2020.PDF

[3]Net Proceeds from Sale before capital gains taxes

[4]First Tier Distribution - 18% preferred return & return of capital as per CSC 4540 LLC Limited Liability Company Agreement; Capital Call Summary

# EXHIBIT 2

## ORGANIZATIONAL CHART



#11012137 v7 \026143 \0003