UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In Re:                                            :
                                                  :
VERNON 4540 REALTY LLC,                           :
                          Debtor.                 :
------------------------------------------------------------x
BRENT CARRIER,                                    :        **OPINION AND ORDER**
                          Appellant,              :
v.                                                :        21 CV 5289 (VB)
                                                  :
45-50 VERNON LP, JSMB 4540 LLC, JSMB              :
4540 MM LLC, and CSC 4540, LLC,                   :
                          Appellees.              :
------------------------------------------------------------x

Briccetti, J.:

        Appellant Brent Carrier, proceeding pro se, appeals from a May 4, 2021, order of the U.S.

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying

appellant's motions to vacate, set aside, alter, amend, or reconsider the Bankruptcy Court's March

29, 2021, order granting summary judgment in favor of appellees, 45-50 Vernon LP, JSMB 4540

LLC, JSMB 4540 MM LLC, and CSC 4540, LLC (the "Reconsideration Order"), in an adversary

proceeding commenced by appellees against appellant and the debtor.

        Liberally construed, appellant also appeals from the Bankruptcy Court's underlying March

29, 2021, order granting appellees' summary judgment motion (the "Summary Judgment

Motion") declaring that a tax refund forthcoming to appellant in his capacity as the managing

member of the debtor is, in fact, the property of the debtor's estate (the "Summary Judgment

Order").

        For the reasons set forth below, both the Summary Judgment Order and the

Reconsideration Order are AFFIRMED.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 158(a).

**BACKGROUND**

I.      Factual Background

The following factual background is drawn primarily from the parties' briefs, underlying declarations, affidavits, and accompanying exhibits, and appellees' underlying statement of undisputed material facts pursuant to Local Bankruptcy Rule 7056-1(b).

Appellant Brent Carrier is a real estate investor and the managing member of the debtor, Vernon 4540 Realty LLC, a limited liability company ("LLC") created for the purpose of developing real property located at 45-40 Vernon Boulevard, Long Island City, Queens, New York City (the "Property").  The Property, the site of a former paint factory, is classified as a "brownfield site," meaning a property in need of environmental remediation under the New York State Environmental Conservation Law due to detectable levels of environmental contamination.

To incentivize the remediation and development of brownfield sites like the Property, New York State offers tax credits to private-sector applicants who clean up and redevelop the contaminated properties.  The tax credits are calculated as 28% of the qualifying expenditures incurred by the applicant in connection with the remediation process (the "Brownfield Tax Credits"), and may result in a tax refund to the applicant if the credit is greater than the applicant's New York State tax liability.

To apply for Brownfield Tax Credits, an applicant must submit a request to the New York State Department of Environmental Conservation ("DEC") to participate in the brownfield cleanup program, execute a brownfield site cleanup agreement with the DEC, and then obtain a

certificate of completion from the DEC establishing the applicant's eligibility for the Brownfield Tax Credits.

On November 15, 2013, the debtor executed an agreement (the "LLC Agreement") with appellees 45-50 Vernon LP, JSMB 4540 LLC, and JSMB 4540 MM LLC, to create a new LLC—appellee CSC 4540, LLC ("CSC")—that would further facilitate development of the Property. (BK Doc. #49-5).[1] The LLC Agreement provides that CSC shall cause the debtor or shall on its own "apply . . . for Brownfield Tax Credits in connection with certain site preparation and cleanup, groundwater remediation, and tangible property development related to the [the Property]." (Id. § 6.10). The LLC Agreement further provides that if CSC, in turn, "makes any expenditures qualifying for the Brownfield Tax Credits, then one-half of such qualifying expenditures and the related Brownfield Tax Credits shall be allocated among the [the Class A members—appellees 45-50 Vernon LP and JSMB 4540 LLC], . . . and the other half of such expenditures and the related Brownfield Tax Credits shall be allocated to the [debtor, the Class B member]." (Id. § 8.2).[2]

On December 15, 2016, the debtor received a certificate of completion from the DEC in connection with the remediation of the Property, reflecting that the debtor was party to a brownfield cleanup agreement that was executed on September 4, 2008; made expenditures to facilitate the environmental remediation of the Property; and was therefore entitled to tax credits

---

[1]     This Opinion and Order references filings in this case by "(Doc. #__)," and in the adversary proceeding before the Bankruptcy Court by "(BK Doc. #__)."

[2]     The original Class A members included an entity named "Manresa Limited." (BK Doc. #56 ¶ 12). By an agreement dated November 17, 2014, Manresa Limited transferred its Class A interests under the LLC Agreement to appellee 45-50 Vernon LP. (Id.).

equal to 28% of those remediation expenditures.  These qualifying remediation expenditures were made by the debtor, without any payments or contributions from appellant Carrier.

Upon receipt of the certificate of completion, appellant, in his capacity as managing member of the debtor, applied for the applicable Brownfield Tax Credits.  Accordingly, the debtor now stands to receive the Brownfield Tax Credits associated with the remediation costs incurred in connection with the Property.  However, because the debtor is an LLC that elected to be treated as a pass-through entity for tax purposes, it will receive the Brownfield Tax Credits in the form of a tax refund—amounting to at least $1.3 million—payable to appellant in his capacity as managing member of the debtor (the "Tax Refund").

Appellant's claim to the Tax Refund is currently under audit, as is a competing claim for Brownfield Tax Credits filed by appellee CSC.  CSC contends it is responsible for the Property's remediation expenditures, and that the debtor is thus entitled only to Brownfield Tax Credits amounting to half of CSC's total expenditures, consistent with the LLC Agreement.

II.    Procedural History

On November 9, 2020, appellees commenced the instant adversary proceeding seeking  a declaratory judgment that any Brownfield Tax Credits attributable to the debtor and payable to appellant in the form of the Tax Refund, are, in fact, property of the debtor's estate, and do not belong to appellant personally, as well as an order requiring appellant to turn over the Tax Refund upon receipt.

Following oral argument and a bench ruling on March 8, 2021, the Bankruptcy Court entered the Summary Judgment Order on March 29, 2021, which (i) declared the Tax Refund to be property of the debtor's estate, notwithstanding its payment to appellant as managing member of the debtor; (ii) appointed an examiner to objectively pursue the debtor's interest in the

Brownfield Tax Credits, including investigating whether the Brownfield Tax Credits separately sought by CSC more appropriately belong to the debtor, as appellant contends; (iii) ordered that appellant turn over the Tax Refund and any supporting documentation to the examiner upon receipt; and (iv) enjoined the debtor from distributing the pending Tax Refund until further order of the court.

On April 13, 2021, appellant filed two motions under Rule 60(b) of the Federal Rules of Civil Procedure: a "motion to vacate, set aside, alter, or amend" the Summary Judgment Order and a "motion for reconsideration of" the Summary Judgment Order (collectively, the "Reconsideration Motion"). The Reconsideration Motion was premised largely on the purportedly newly discovered evidence that the debtor had previously contractually assigned all of its rights to the Brownfield Tax Credits to appellant in his personal capacity.

On May 4, 2021, the Bankruptcy Court denied the Reconsideration Motion.

On May 18, 2021, appellant filed a notice of appeal attaching the Reconsideration Order, but not the Summary Judgment Order.

## DISCUSSION

I.  Jurisdiction

As an initial matter, appellees argue the Court lacks jurisdiction to consider appellant's arguments regarding the underlying Summary Judgment Order because appellant only appealed from the Reconsideration Order.

The Court disagrees.

Ordinarily, "[a] district court can only review bankruptcy orders designated in the notice

of appeal." In re Arfa, 2015 WL 5610864, at *7 (S.D.N.Y. Sept. 23, 2015).[3] "However, notices of appeal should be construed 'liberally, taking the parties' intentions into account.'" Id. (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 256 (2d Cir. 1995)).[4]

Accordingly, courts "have jurisdiction to consider the underlying decision on an appeal from a motion for reconsideration where it is clear that the petitioner intended to appeal that decision and the respondents were not prejudiced." In re Speer, 771 F. App'x 25, 26 n.2 (2d Cir. 2019) (summary order). That is, a court may consider the decision underlying a motion for reconsideration, assuming doing so would not prejudice the appellees, when the "party's intent to appeal [that underlying] judgment is 'manifest' considering the 'notices and the appeal papers together.'" See In re Arfa, 2015 WL 5610864, at *7 (quoting Foman v. Davis, 371 U.S. 178, 181 (1962)).

Here, appellant's statement of issues on appeal plainly evinces an intent to appeal the merits of the Summary Judgment Order, in addition to the Reconsideration Order. (See, e.g., Doc. #3 ("Did Judge Drain err by finding that Appellant's Brownfield Tax Credits are the property of the Debtor's Estate?")). Indeed, on July 23, 2021, appellant reiterated this intent when he explained to the Bankruptcy Court—in a hearing on that court's denial of appellant's motion to stay all proceedings pending the adjudication of this appeal—that "the purpose of filing the appeal" was to "appeal the decision on the Brownfield Tax Credits." (Doc. #19-1 at 5–6).

In light of the manifest intent to appeal from both orders and the lack of any prejudice articulated by appellees, the Court will review on appeal both the Summary Judgment Order and

_____

[3]     Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[4]     Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

the Reconsideration Order.

II.    Appeal from the Summary Judgment Order

Appellant argues the Bankruptcy Court improperly ignored the debtor's pass-through status when it granted summary judgment on appellees' claim for declaratory judgment that the Tax Refund is part of the debtor's estate.

The Court disagrees.

A.    Standard of Review

A district court reviews a bankruptcy court's conclusions of law de novo and its findings of fact for clear error.  See In re Ames Dep't Stores, Inc., 582 F.3d 422, 426 (2d Cir. 2009). When a district court reviews a bankruptcy court's grant of summary judgment, however, it reviews the decision "de novo because the determination that there are no genuine issues of material fact is a legal conclusion."  In re Teligent Inc., 324 B.R. 479, 487 (S.D.N.Y. 2005).

Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings.  Fed. R. Bankr. P. 7056.  Accordingly, the Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Id.

A dispute about a material fact is genuine if there is sufficient evidence upon which "a reasonable jury could return a verdict for the nonmoving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Although courts must afford a pro se litigant special solicitude on a motion for summary judgment and read his submissions "to raise the strongest arguments that they suggest," such solicitude "does not relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003).

B.      Declaratory Judgment on Ownership of the Tax Refund

The Bankruptcy Court correctly concluded that the Tax Refund is property of the debtor's estate as a matter of law.

As an initial matter, it is well settled that "[t]he nature and extent of the debtor's interest in [a given] property is determined by applicable non-bankruptcy law. Whether that interest is included in the property of the debtor's estate is determined by bankruptcy law." In re Prudential Lines Inc., 928 F.2d 565, 569 (2d Cir. 1991).

With respect to the latter determination, Section 541 of the Bankruptcy Code provides that the property of a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad language sweeps "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative," within the debtor's reach as the property of the bankruptcy estate. Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008).

Moreover, it is well established that "a debtor's future . . . income tax refund is easily included in the comprehensive definition of 'property of the estate'" under Section 541(a). See In re Duarte, 492 B.R. 100, 103 (Bankr. E.D.N.Y. 2011).

Accordingly, "the Tax Refund [in this case] is property of [the debtor's estate] to the extent" of the debtor's interest in the Tax Refund, which is determined by non-bankruptcy law. In re First Cent. Fin. Corp., 269 B.R. 481, 487 (Bankr. E.D.N.Y. 2001), aff'd, 377 F.3d 209 (2d Cir. 2004).

The Court agrees with the Bankruptcy Court that the Tax Refund here is "attributable to the debtor, and based on expenditures by the debtor," and is therefore part of the debtor's estate. (BK Doc. #61 at 25). That is, New York ties the receipt of Brownfield Tax Credits to remediation expenditures incurred in connection with a given brownfield site, and it is undisputed in this case that the debtor, not appellant, applied to participate in the DEC's Brownfield remediation program; executed an agreement with the DEC by which it made certain expenditures for the purpose of environmental remediation of the Property; and finally was named specifically in the DEC's certificate of completion in recognition of the remediation efforts for the Property. It is further undisputed that because the debtor, an LLC, has not elected to be treated as a corporation for tax purposes, any tax credit for which the debtor would be entitled in the form of a tax refund cannot be paid to the debtor directly, but rather can only be paid or passed through to appellant in his capacity as the debtor's managing member. Accordingly, the Tax Refund is attributable to the debtor under New York law, and would be paid to appellant for the benefit of the debtor.

Appellant nonetheless insists that tax refunds in connection with pass-through entities like LLCs belong exclusively to the owners of those entities. But the cases upon which appellant relies are distinguishable in that, among other facts, they involved taxpayers who were found to

have made the payments resulting in the refund.  See, e.g., In re RedF Mktg., LLC, 589 B.R. 534, 543 (Bankr. W.D.N.C. 2018) (LLC's "tax attributes, including any right to the Tax Refunds, belong[ed] to its shareholders and not the bankruptcy trustee," when the shareholder paid the taxes in the first instance).  Here, by contrast, there is no genuine issue of material fact that the Tax Refund is directly traceable to the remediation expenditures made by the debtor, not to any such expenditures made by appellant.  See also In re KRSM Props., LLC, 318 B.R. 712, 719–20 (B.A.P. 9th Cir. 2004) (holding that "[w]hen [an] LLC sold the real property it owned in its name, the proceeds from the sale remained its property" for the purposes of the LLC's bankruptcy estate, despite the fact that "the owners caused the LLC to use [the proceeds] to fund estimated personal income tax payments").

Accordingly, the Bankruptcy Court did not err in finding that the Tax Refund was part of the debtor's bankruptcy estate as a matter of law, thereby granting the Summary Judgment Motion.[5]

III.    Appeal from the Reconsideration Order

Finally, appellant argues the Bankruptcy Court erred in denying his Reconsideration Motion on the basis of an "amended operating agreement" between the debtor and appellant by

_____

[5]     Appellant's remaining arguments with respect to the Summary Judgment Order are: (i) the mandate of the examiner appointed by the Bankruptcy Court should have included "investigat[ing] and act[ing] upon tax filings of [CSC]" to pursue the debtor's interest in "certain tangible [Brownfield Tax Credits]" that CSC may claim in the future (Doc. #12 at 7); (ii) appellees engaged in "prohibited transfers" under the LLC Agreement and must therefore indemnify appellant against the costs incurred in connection with the instant litigation (Id. at 17); and (iii) appellees filed "false and indefensible" proofs of claim.  (Id. at 18).  However, the Court agrees with the Bankruptcy Court that none of these issues bears any connection to the subject of this adversary proceeding, which is the debtor's rights respecting the Brownfield Tax Credits arising out of the debtor's qualifying remediation expenditures and the resulting Tax Refund owed to appellant as the debtor's managing member.  Accordingly, the Court need not address these arguments further.

which the debtor, through appellant in his capacity as managing member, purportedly transferred all of its rights to the Brownfield Tax Credits to appellant in his personal capacity.  (See Doc. #15 at ECF 14–18).[6]

The Court disagrees.

A.    Standard of Review

A bankruptcy court's decision under Fed. R. Civ. P. 60, made applicable to adversary proceedings by Bankruptcy Rule 9024, is reviewed for abuse of discretion.  In re Teligent, Inc., 326 B.R. 219, 224 (S.D.N.Y. 2005).  "The appeal from the denial of a Rule 60 motion brings up only the denial of the motion and not the merits of the underlying judgment itself."  Id. (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1147 (2d Cir. 1994)).

B.    Newly Discovered Evidence under Rule 60(b)(2)

Liberally construed, plaintiff moved for reconsideration under Rule 60(b)(2).  Rule 60(b)(2) permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" in light of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial."

"Generally, courts require that the evidence in support of the motion to vacate a final judgment be highly convincing, . . . that a party show good cause for failure to act sooner, . . . and that no undue hardship be imposed on other parties."  Kotlicky v. U.S. Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987).

To merit relief under Rule 60(b)(2), the movant must demonstrate:

(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such

---

[6]      "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

United States v. Int'l Brotherhood of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001).

Here, the Bankruptcy Court did not abuse its discretion in denying appellant relief under Rule 60(b)(2).

First, the purported amended operating agreement is not "newly discovered evidence." United States v. Int'l Brotherhood of Teamsters, 247 F.3d at 392. As the Bankruptcy Court found, the purported agreement was dated November 14, 2013, and is signed only by appellant, both in his personal capacity and as managing member of the debtor. Accordingly, the agreement appears to have been exclusively available to appellant well before the Bankruptcy Court considered the Summary Judgment Motion and entered the Summary Judgment Order.

Second, appellant offers neither "justifiable ignorance" of the purported agreement nor any evidence of any due diligence undertaken to secure or offer the agreement before the time of the Summary Judgment Order.[7]

Third, it is not evident that the purported amended operating agreement is "of such importance that it probably would have changed the outcome." United States v. Int'l Brotherhood of Teamsters, 247 F.3d at 92. That is, although the purported agreement states appellant "shall own" all of the Brownfield Tax Credits attributable to the debtor (see Doc. #15 at ECF 14–18), such a transfer of interests, does not, without more, change the fact that the Tax Refund is directly traceable to the remediation expenditures made by the debtor.

Accordingly, the Bankruptcy Court did not abuse its discretion in refusing to consider the

---

[7] To the contrary, despite referring to the purported agreement in the Reconsideration Motion and during oral argument on the Reconsideration Motion, appellant offered a copy of the document for review for the first time as an attachment to his reply brief on this appeal.

purported amended operating agreement.

**CONCLUSION**

The Bankruptcy Court's Reconsideration Order and underlying Summary Judgment Order are AFFIRMED.

The Clerk is directed to terminate the pending appeal and close this case.

Chambers will mail a copy of this Opinion and Order to appellant at the address on the docket.

Dated: June 13, 2022
      White Plains, NY

                  SO ORDERED:

                  _____
                  Vincent L. Briccetti
                  United States District Judge